MURPHY, P.J.
Defendant was convicted by a jury of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and he was sentenced as a fourth-offense habitual offender, MCL 769.12, to 76 to 156 months’ imprisonment. Defendant appeals as of right, challenging his conviction and sentence. We affirm defendant’s conviction, vacate his sentence, and remand for resentencing.
I. FACTUAL BACKGROUND
Defendant and his cousin, codefendant Charles Johnson, were both charged with second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, possession of a firearm during the commission of a felony, MCL 750.227b, and felon-in-possession, MCL 750.224f, in connection with the shooting death of Timothy Kirby and the assault of Kirby’s nephew, Christopher Johnson, which occurred *151 outside the victims’ apartment complex. The prosecution presented evidence that the victims were inside the apartment and defendant and codefendant Johnson were among a group “partying” outside when Kirby heard someone say that he had been stabbed. When Christopher Johnson and Kirby went outside to investigate, they encountered defendant, and Kirby inquired about what was occurring. According to Christopher Johnson, defendant responded by asking if the victims “got a beef’ and signaling to codefendant Johnson, who then approached the men, brandished a handgun, and shot toward the victims as they fled. Codefendant Johnson, testifying on defendant’s behalf,[1] admitted that he had quickly approached the victims after they said something to defendant, pulled his handgun, and fired three or four shots, killing Kirby. Codefendant Johnson denied that defendant had motioned or signaled to him and described defendant as being in shock after codefendant Johnson fired his gun. The jury convicted defendant of felon-in-possession—there was evidence that defendant was observed holding a gun after the shooting by codefen-dant Johnson had concluded—but it acquitted him of the additional charges.
II. TRIAL COURT’S CONDUCT
Defendant argues that he is entitled to a new trial because the trial judge’s comments to defense counsel during his cross-examination of the officer in charge deprived him of a fair trial. We disagree.
“The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law *152 that this Court reviews de novo.” People v Stevens, 498 Mich 162, 168; 869 NW2d 233 (2015). A defendant must overcome “a heavy presumption of judicial impartiality” when claiming judicial bias. People v Jackson, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). To determine whether the trial judge’s conduct deprived defendant of a fair trial, we consider whether the trial judge’s “conduct pierce [d] the veil of judicial impartiality.” Stevens, 498 Mich at 164, 170. “A judge’s conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge’s conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.” Id. at 171. This is a fact-specific inquiry, and we must consider the cumulative effect of any errors. Id. at 171-172. A single instance of misconduct generally does not result in the appearance that a trial judge is biased unless the instance is “so egregious that it pierces the veil of impartiality.” Id. at 171. To evaluate the totality of the circumstances, we consider a variety of factors, including
the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge’s conduct was directed at one side more than the other, and the presence of any curative instructions. [Id. at 172.]
Initially, defendant points to the trial judge’s remark that defense counsel might “get a spanking.” After the trial judge had sustained one of the prosecutor’s objections to defense counsel’s questions, defense counsel asked, “May we approach on something before I get to this area just in case you—[.]” At that point, the trial *153 judge interjected, “Just before you get a spanking.” Although this comment would have been better left unsaid, the judge seemed to be acknowledging defense counsel’s reason for approaching the bench. During the preceding line of questioning, the trial judge had sustained the prosecutor’s objections and had intervened on at least nine occasions, attempting to explain to defense counsel why his questions were improper and needed to be rephrased. Although the judge made the challenged statement in a jesting manner, the clear intent of the comment was that defense counsel could approach the bench in an attempt to avoid being interrupted and corrected yet again. Considering the trial judge’s comment in context, we cannot conclude that the isolated and flippant statement influenced the jury.
Defendant next directs our attention to additional exchanges between defense counsel and the trial judge that defendant alleges demonstrate bias. For instance, defendant claims that the judge thwarted counsel’s attempts to ask the officer in charge if he had made “a deal” with a witness, if defendant was charged in this case because he was untruthful, and when the arrest warrant was issued. It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty. See People v Conley, 270 Mich App 301, 307; 715 NW2d 377 (2006). Although a defendant has the right to cross-examine his accusers as secured by the Confrontation Clause, US Const, Am VI, a court has wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness. People v Adamski, 198 Mich App 133, 138; 497 NW2d 546 (1993). A court must “exercise reasonable control over *154 the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.” MRE 611(a).
The trial judge’s remarks were not of such a nature as to unduly influence the jury. The record shows that the trial judge appropriately exercised her authority to control the trial and prevent excessive and improper questioning of the officer. The judge aptly noted that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.” See MRE 602. In addition, the trial judge interrupted various questions by defense counsel that called for speculation and were repetitive and argumentative. Defendant has provided no explanation, argument, or authority indicating how any of the evidentiary objections were improper and not in accordance with MRE 611(a). Rather, defendant focuses on the trial judge’s interruptions and apparent growing frustration with defense counsel, but fails to acknowledge that defense counsel talked back to the judge and ignored the judge’s directives to move on and rephrase questions, which necessitated many of the judge’s repeated interruptions.
Next, defendant complains about the trial judge’s comments in the following passage, which occurred as defense counsel questioned the officer:
Q. Did you testify in the case?
A. Yes.

Q. And you sat there in the witness chair?

A. Yes.

*155
Q. As a witness?

A. Yes.

The Court. [Counsel,] why do you drag things out?
[Defense Counsel]: It’s my approach. Can I just be me[?]
The Court: No, because it is getting to be argumentative and you know that the rules of evidence don’t allow arguments.
[Defense Counsel]: I’m not being argumentative. [Emphasis added.]
Defendant fails to acknowledge defense counsel’s unnecessary and inane questions of the officer and counsel’s improper and disrespectful response to the judge’s ruling and statements in the above colloquy. In sum, considering the totality of the circumstances, including defense counsel’s questions, the trial judge’s interruptions and remarks were reasonably measured and were focused on enforcing the rules of evidence. They were not calculated to pierce the veil of judicial impartiality and were unlikely to unduly influence the jury to defendant’s detriment. In addition, it does not appear from the record that the trial judge interjected more frequently during the defense’s improper questioning of the witnesses than during the prosecution’s examinations. Finally, the trial judge explained to the jury that she had a responsibility to ensure that the trial was run efficiently and fairly. At the beginning of trial and at the close of the proofs, the judge instructed the jury that the case must be decided solely on the basis of the evidence, that the judge’s comments and rulings were not evidence, that the judge was not trying to influence the jury’s vote or express a personal opinion about the case when making a comment or ruling, and that if the jury believed that the judge had an opinion, that opinion had to be disregarded. These instructions weigh against a conclusion that the trial *156 judge pierced the veil of judicial impartiality and deprived defendant of a fair trial. Stevens, 498 Mich at 190. We also cannot help but note that defendant was acquitted by the jury of murder, assault, and felony-firearm charges, seriously calling into question defendant’s claim that judicial bias improperly influenced the jurors to his detriment. Defendant has not demonstrated that the trial judge’s conduct deprived him of a fair trial.
III. SENTENCING
Defendant poses, broadly speaking, a two-pronged attack against the sentence imposed by the trial court. First, defendant presents a challenge regarding the adequacy of the evidence supporting the court’s scoring of several offense variables (OVs): OV 1, MCL 777.31; OV 3, MCL 777.33; OV 4, MCL 777.34; and OV 9, MCL 777.39. We shall refer to this argument as defendant’s “evidentiary challenge.” Second, defendant presents a constitutional argument under People v Lockridge, 498 Mich 358; 870 NW2d 502 (2015), contending that the trial court engaged in impermissible judicial fact-finding with regard to the same OVs. We shall refer to this argument as defendant’s “constitutional challenge.”
Each of defendant’s challenges has its own distinct remedy. With respect to the evidentiary challenge, if the trial court clearly erred by finding that a preponderance of the evidence supported one or more of the OV scores or otherwise erred by applying the facts to the OVs, People v Hardy, 494 Mich 430, 438; 835 NW2d 340 (2013), and if the scoring error resulted in an alteration of the minimum sentence range, he would be entitled to resentencing, People v Francisco, 474 Mich 82, 89; 711 NW2d 44 (2006). On the other hand, a *157 Crosby remand[2] under Lockridge is not the same remedy as remanding a case for resentencing because of an error in applying the guidelines. In Lockridge, our Supreme Court set forth the parameters of a Crosby remand, stating:
[O]n a Crosby remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the “circumstances existing at the time of the original sentence.” [Lockridge, 498 Mich at 398, quoting United States v Crosby, 397 F3d 103, 117 (CA 2, 2005).]
Accordingly, a Crosby remand results in the possibility of resentencing, whereas, in the context of a successful evidentiary challenge, resentencing is actually ordered by the appellate court. Of course, post-Lockridge, any resentencing will have to be conducted pursuant to the principles enunciated in Lockridge, primarily the directive that the guidelines are now advisory only. Lockridge, 498 Mich at 365. When this Court is presented with an evidentiary and a constitutional challenge regarding the scoring of the guidelines, the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or Lockridge challenge becomes moot—a defendant will receive the protec *158 tions of Lockridge when he or she is resentenced. And if an evidentiary challenge does not succeed, then and only then should we entertain the constitutional challenge. Therefore, we disagree with any assertion that defendant’s evidentiary challenge need not be reached because his constitutional challenge under Lockridge is worthy of a Crosby remand.[3]
The fact that a trial court engaged in judicial fact-finding is not relevant to the inquiry into an eviden-tiary challenge.[4] The constitutional evil addressed by the Lockridge Court was not judicial fact-finding in and of itself; it was judicial fact-finding in conjunction with required application of those found facts for purposes of increasing a mandatory minimum sentence range. Lockridge remedied this constitutional violation by making the guidelines advisory, not by eliminating judicial fact-finding. As explained by the Court in Lockridge:
Th[e] deficiency is the extent to which the guidelines require judicial fact-finding beyond facts admitted by the *159 defendant or found by the jury to score offense variables ... that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the “mandatory minimum” sentence....
To remedy the constitutional violation, we sever MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. We also strike down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure.
Consistently with the remedy imposed by the United States Supreme Court..., we hold that a guidelines minimum sentence range... is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. [Lockridge, 498 Mich at 364-365 (citations omitted).]
That judicial fact-finding remains part of the process of calculating the guidelines is evidenced by the Lock-ridge Court’s observation that its “holding today does nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not.” Id. at 392 n 28 (second emphasis added). This quote from Lockridge is consistent and reconcilable with the full Lockridge opinion; judicial fact-finding is proper as long as the guidelines are advisory only.[5] Our point is further buttressed by the Supreme Court’s following discussion:
*160 First, the defendant asks us to require juries to find the facts used to score all the OVs that are not admitted or stipulated by the defendant or necessarily found by the jury’s verdict. We reject this option. The constitutional violation can be effectively remedied without burdening our judicial system in this manner, which could essentially turn sentencing proceedings into mini-trials. And the United States Supreme Court... expressly rejected this remedy because of the profound disruptive effect it would have in every case. ... “It would alter the judge’s role in sentencing.” We agree. [Lockridge, 498 Mich at 389 (citation and punctuation omitted; emphasis added).]
Absent the use of an admission or stipulation or a jury’s factual findings to assess a defendant’s OVs, the only remaining avenue available to score the OVs entails judicial fact-finding, which is of no constitu *161 tional consequence if the guidelines are merely advisory. Accordingly, we disagree with any contention that a trial court can only use facts determined by a jury beyond a reasonable doubt when calculating a defendant’s OY scores under the guidelines. This is in direct contradiction of the Lockridge Court’s rejection of the defendant’s argument that juries should be required to find the facts used to score the OVs. Lockridge, 498 Mich at 389.
At this juncture, we find it necessary to address the comments in the concurring/dissenting opinion, in which our colleague indicates that she does not understand our analytical framework for evaluating “eviden-tiary” versus “constitutional” challenges and that it does not make sense to her. It appears that the concurrence/dissent is of the view that the only relevant inquiry relates to Lockridge and whether a Crosby remand is necessary. The concurrence/dissent fails to appreciate that, as mentioned earlier, aside from the constitutional challenge under Lockridge, defendant separately argues that there was inadequate evidence to support the number of points assessed under the pertinent OVs. The concurrence/dissent conflates the evidentiary and constitutional challenges. The evidentiary challenge cannot simply be ignored, and in People v Sours, 315 Mich App 346, 348-351; 890 NW2d 401 (2016), this Court proceeded exactly as we are doing here, resolving the evidentiary challenge first and then moving on to the constitutional challenge, which was rendered moot in Sours because resentencing was dictated in light of the successful evidentiary challenge. The issuance of Lockridge did not result in depriving a defendant of presenting a traditional evidentiary challenge to a trial court’s scoring of the guidelines, even if the scoring was also constitutionally problematic under Lockridge; a *162 defendant would be free to forgo the constitutional challenge or embrace it in conjunction with the eviden-tiary challenge. Stated otherwise, evidentiary challenges to OV scores for sentences imposed pre-Lockridge are not irrelevant or moot simply because the scoring may also have violated the constitutional protections recognized in Lockridge. And again, the remedies for successful evidentiary and constitutional challenges are distinct.[6]
Next, with respect to defendant’s evidentiary challenge, the only OV that is initially pertinent is OV 3, which was scored at 100 points. Defendant’s total OV score was 155 points, placing him at OV Level VI, which is the highest OV level in the Class E grid applicable to the firearm offense of which he was convicted. MCL 777.16m; MCL 777.66. Indeed, a total OV score of 75 or more points is all that is needed to be placed at OV Level VI. MCL 777.66. And OVs 1, 4, and 9, as assessed against defendant, add up to 45 points, which if subtracted from defendant’s total OV score of 155 points leaves a total of 110 points, and defendant would remain at OV Level VI. Therefore, even if all three of these OVs were improperly assessed and *163 should have been scored at zero points, it would not alter the guidelines range, making resentencing unnecessary. Francisco, 474 Mich at 89 n 8 (“Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.”). However, OV 3 was assessed at 100 points; therefore, it is necessary to examine the scoring of OV 3.
OV 3 addresses physical injury to a victim, and a score of 100 points is mandated where “[a] victim was killed,” MCL 777.33(l)(a), so long as the “death results from the commission of a crime and homicide is not the sentencing offense,” MCL 777.33(2)(b). Defendant contends that his conduct related to the felon-in-possession conviction did not cause or result in anyone’s death. See People v Laidler, 491 Mich 339, 345; 817 NW2d 517 (2012) (“Because the Legislature in MCL 777.33(2)(b) used the phrase ‘results from the commission of a crime,’ it is clear that the defendant’s criminal actions must constitute a factual cause of a death for purposes of OV 3.”). OV 3 also provides that “[i]n multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points.” MCL 777.33(2)(a). Codefendant Johnson, who pleaded guilty during the trial to the charges against him and then testified on defendant’s behalf, was assessed 100 points for OV 3 in an earlier sentencing.[7] The sentencing record in defendant’s case is simply unclear regarding whether the trial court assessed 100 points for OV 3 on the basis of the multiple-offender provision, MCL *164 777.33(2)(a), or on the basis of a straightforward application of the facts pertaining to defendant’s conduct, MCL 777.33(2)(b), or on both bases. Regardless, neither provision supports the assessment of 100 points for OV 3.
First, this was not a multiple-offender case because defendant was acquitted of second-degree murder, assault with intent to commit murder, and felony-firearm, because the felon-in-possession conviction was based on evidence apart from the shooting, and because codefendant Johnson was convicted by plea of the crimes for which defendant was acquitted. See People v Johnston, 478 Mich 903, 904 (2007); People v Morson, 471 Mich 248, 260 n 13; 685 NW2d 203 (2004) (rejecting the argument that “the multiple offender provision does not require a comparison of the OV scores for identical crimes,” and noting that comparison is to be made to “OV scores received for a specific offense”). Had defendant been convicted of assault with intent to commit murder as was his codefendant, then an assessment of 100 points for OV 3 would have been proper.[8] However, the multiple-offender provision in OV 3 was not implicated in this case.
Next, looking solely at defendant’s conduct, our analysis of whether “[a] victim was killed,” MCL 777.33(l)(a), and whether the “death resulted] from *165 the commission of a crime,” MCL 777.33(2)(b), does not support a conclusion that the death in this case resulted from or was factually caused by defendant’s commission of the offense of felon-in-possession, Laidler, 491 Mich at 345.[9] “[T]he offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise.” People v McGraw, 484 Mich 120, 129; 771 NW2d 655 (2009). OV 3 does not specifically provide otherwise; therefore, we can only take into consideration defendant’s sentencing offense for purposes of scoring OV 3. See People v Mushatt, 486 Mich 934 (2010). The record reflects that defendant’s conviction of felon-in-possession was based on the testimony of a witness who, after the shooting, observed a man wearing a white shirt holding a gun and codefendant Johnson’s testimony that defendant was wearing a white shirt at the time of the incident. There was no evidence, let alone a preponderance of it, establishing a causal connection between defendant’s crime of felon-in-possession and Kirby’s death. To the extent that the trial court relied on MCL 777.33(2)(b) in assessing 100 points for OV 3, it clearly erred. Hardy, 494 Mich at 438. On examination of the remaining provisions in OV 3 regarding life-threatening, permanently incapacitating, or bodily injuries, none would apply, considering the lack of a causal link between defendant’s felon-in-possession offense and Kirby’s death. MCL 777.33(l)(c) through (e). The scoring error results in an alteration of the minimum sentence range, thereby entitling defendant to resentencing, Francisco, 474 Mich at 89, at which time he will receive the constitutional protection of advisory guidelines as dictated by Lockridge. As in Sours, 315 Mich App at 351, *166 because defendant is entitled to be resentenced, his constitutional challenge under Lockridge is now moot and need not be addressed.
The remaining OV scores now become relevant under our analysis for purposes of resentencing and the correct placement of defendant in the Class E grid. With respect to OV 1, defendant’s challenge of the 25-point assessment was waived at sentencing, see People v Carter, 462 Mich 206, 215; 612 NW2d 144 (2000); however, defendant also presents an ineffective-assistance claim on the matter, and we agree that counsel’s performance was deficient in waiving a challenge to OV 1 and that defendant was prejudiced by counsel’s error, see People v Carbin, 463 Mich 590, 600; 623 NW2d 884 (2001); see also Francisco, 474 Mich at 89 n 8. Twenty-five points is properly assessed for OV 1 when “[a] firearm was discharged at or toward a human being . . . .” MCL 777.31(l)(a). OV l’s multiple-offender provision is not implicated for the same reasons already set forth in addressing the multiple-offender provision in OV 3. Further, “OV 1 is an ‘offense-specific’ variable; therefore, in scoring OV 1, [a] trial court [is] limited to ‘considering the sentencing offense alone.’ ” People v Chelmicki, 305 Mich App 58, 72; 850 NW2d 612 (2014), quoting McGraw, 484 Mich at 127. Here, there was no evidence that defendant’s possession of the gun, which was used to support the felon-in-possession conviction, entailed defendant’s discharge of the weapon, let alone discharging it at or toward a human being. The trial court thus clearly erred by assessing 25 points for OV 1, defense counsel’s performance in waiving an argument relative to OV 1 was deficient, and defendant was prejudiced because the waived error altered the minimum guidelines range, MCL 777.66. We do note that a five-point score for OV 1 is proper when “[a] weapon was dis *167 played . ..MCL 777.31(l)(e). Given that resentenc-ing is already necessary in this case, we direct the trial court on resentencing to entertain the question whether five points should be assessed for OV l.[10]
With respect to OV 4, defendant was assessed 10 points, which is the proper score when “[sjerious psychological injury requiring professional treatment occurred to a victim [.] ” MCL 777.34(l)(a). Because OV 4 does not specifically provide otherwise, we are limited to solely considering the sentencing offense of felon-in-possession when scoring OV 4. McGraw, 484 Mich at 129. The record contains no evidence that serious psychological injury occurred to a victim as a result of defendant’s status as a felon and his being seen carrying a gun after the shooting; OV 4 should have been scored at zero points. The trial court clearly erred by assessing 10 points for OV 4.
Finally, defendant was assessed 10 points for OV 9, which is the proper score for OV 9 when “[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]” MCL 777.39(l)(c). The McGraw Court specifically held that OV 9 can only be scored in reference to the sentencing offense. McGraw, 484 Mich at 133-134. In the instant case, defendant’s commission of the offense of felon-in-possession, in and of itself, simply did not place anyone in danger of physical injury or death. Accordingly, the trial court clearly erred by assessing 10 points for OV 9, which should have been scored at zero points.
We affirm defendant’s conviction, vacate his sentence, and remand for resentencing consistent with this opinion. We do not retain jurisdiction.
*168 CAVANAGH, J., concurred with MURPHY, P.J.

 Defendant and codefendant Johnson were tried together. Midway through trial, codefendant Johnson pleaded guilty to all charges against him and then testified for defendant.

 This is a reference to United States v Crosby, 397 F3d 103 (CA 2, 2005).

 In People v Sours, 315 Mich App 346; 890 NW2d 401 (2016), this Court recently addressed an evidentiary challenge regarding OV 19, MCL 777.49 (interference with the administration of justice), as well as a constitutional challenge under Lockridge concerning OV 19. The Sours panel first analyzed the evidentiary challenge, concluding that the assessment of 10 points for OV 19 was improper, that OV 19 should have been assessed zero points, that the scoring error altered the minimum sentence range, and that, accordingly, the defendant was entitled to resentencing. Sours, 315 Mich App at 350-351. Moving on to the defendant’s constitutional challenge, this Court held that “Mecause we conclude that OV 19 should have been scored at zero points and that defendant is entitled to be resentenced, defendant’s Lockridge issue is now moot, and we need not address it.” Id. at 351. Our analysis is entirely consistent with the Sours approach.

 We note that the panel in Sours did not find it problematic, when addressing the evidentiary challenge, that the lower court had engaged in judicial fact-finding in scoring OV 19. See Sours, 315 Mich App at 348-350.

 In People v Blevins, this Court found parts of Lockridge irreconcilable and noted that another panel of the Court had indicated that *160 judicial fact-finding “constitutes a departure.” People v Blevins, 314 Mich App 339, 362 n 8; 886 NW2d 456 (2016), quoting People v Stokes, 312 Mich App 181, 196; 877 NW2d 752 (2015). The Blevins Court concluded that Stokes set forth this judicial fact-finding versus departure distinction in reconciling Lockridge. Blevins, 314 Mich App at 362 n 8. We do not read Stokes as even acknowledging a possible irreconcilable feature of Lockridge, let alone attempting to reconcile parts of Lockridge. The Blevins panel’s conclusion that Lockridge contained language that was difficult to reconcile was predicated on footnote 28 in Lockridge, wherein the Court stated that all OVs must be assessed the highest number of points possible “whether using judge-found facts or not,” and the Lockridge Court’s comments on page 399 that, to show plain error, “a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant. .. .” Blevins, 314 Mich App at 362, 362 n 8, citing Lockridge, 498 Mich at 392 n 28, 399. We do not find any conflict in the language. As we discussed earlier in this opinion, footnote 28 of Lockridge indicates that judicial fact-finding continues to play a role in scoring the guidelines, and the language on page 399 of Lockridge merely provides the analytical framework for determining whether a defendant is entitled to a Crosby remand when the guidelines were mandatory at the time of sentencing. We do not find that Blevins is controlling here, given that Blevins was strictly a case involving a constitutional challenge under Lockridge, and because the commentary in footnote 8 of the Blevins opinion was dicta.

 Perhaps the concurrence/dissent believes that, for example, because an OV was scored on the basis of improper judicial fact-finding under Lockridge in the context of mandatory sentence ranges, any challenge to that particular OV score on the basis that there was generally insufficient evidence in the record to support the judge’s OV assessment need not be addressed or is not viable, forcing sole consideration of the applicability of Lockridge. However, that view fails to recognize that the inadequacy of the evidence can serve as a separate appellate argument, with resentencing as the available remedy, or that argument can be made together with a Lockridge constitutional argument, as in this case, or a defendant could simply and solely present a constitutional challenge. It is a strategic decision to be made by the defendant. Our analytical framework is intended to give direction when both an evidentiary and a constitutional argument are made on appeal.

 Codefendant Johnson’s plea encompassed the crime of second-degree murder, which constitutes homicide, and therefore he was not assessed 100 points for OV 3 relative to that crime, see MCL 777.33(2)(b), but guidelines for codefendant Johnson were also scored for the offense of assault with intent to commit murder, and he was assessed 100 points for OV 3 on that crime.

 We note that the guidelines were not scored for codefendant Johnson regarding his conviction of felon-in-possession, considering his convictions of higher offenses. See People v Lopez, 305 Mich App 686, 690-692; 854 NW2d 205 (2014). Interestingly, had 100 points been the proper score for OV 3 on the basis of the multiple-offender provision, there would not have been a constitutional or Lockridge problem because the death or killing would have been established through codefendant Johnson’s plea to second-degree murder. Also, defendant’s gun possession was separate from codefendant Johnson’s possession and discharge of his firearm.

 Defendant did stipulate that he was a convicted felon when the shootings occurred.

 Even if five points is a proper score for OV 1, the resulting 20-point error in scoring OV 1, as opposed to a 25-point error, would still lower the minimum guidelines range. MCL 777.66.