# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 12, 2017

v

No. 333316
Wayne Circuit Court
LC No. 15-009583-01-FC

TERRELL KEITH SMITH,

Defendant-Appellant.

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of torture, MCL 750.85, kidnapping, MCL 750.349, second-degree criminal sexual conduct (CSC II), 750.520c, armed robbery, MCL 750.529, and unlawful imprisonment, 750.349b. The trial court sentenced defendant, a fourth habitual offender, MCL 769.12, to 42 to 65 years' imprisonment for the torture, kidnapping, armed robbery, and unlawful imprisonment convictions, and 19 to 40 years' imprisonment for the CSC II conviction. We affirm.

This case arises from the October 18, 2015 kidnapping of Latoya Britton by defendant and defendant's then-girlfriend, Patricia Jernigan. Jernigan, a long-time friend of Latoya's, called Latoya that afternoon and asked her to have dinner. Latoya agreed, and Jernigan offered to pick Latoya up at her mother's house. When Jernigan arrived, Latoya entered the passenger's seat of Jernigan's car. According to Latoya, Jernigan drove down the street and turned a corner before pulling over to set her GPS. When the car was stopped, Latoya watched as defendant approached her side of the car on foot with a handgun raised in her direction. Defendant opened the passenger's side door and forced Latoya into the backseat at gunpoint. Latoya exited the car through one of the rear doors and attempted to run, but defendant ran after her, hit her on the head, and pulled her back to the car.

Jernigan drove as defendant forced Latoya into the trunk from the backseat. Defendant closed the trunk off from the interior of the car and they accelerated. Latoya believed the car was driving on I-94 when she located the trunk's interior safety latch and popped it open. Latoya jumped from the trunk onto the freeway and into incoming traffic, rolling on the pavement before righting herself and running toward an entrance ramp yelling for help. Latoya was picked up by another driver, who allowed her to use his phone to call the police.

-1-

Both defendant and Jernigan were charged with multiple crimes for their participation in Latoya's kidnapping. Jernigan pleaded guilty to armed robbery and unlawful imprisonment and agreed to testify at defendant's trial. According to Jernigan, she and defendant had planned to kidnap Latoya and take her to the garage of their shared home, where Jernigan would use both defendant's and Latoya's cell phone to film defendant raping Latoya.

Defendant testified on his own behalf at trial, explaining that he and Jernigan had made plans that evening to have dinner with Latoya and pay her cell phone bill because Latoya had asked Jernigan for help. Defendant claimed that he decided to pay Latoya's cell phone bill in advance and found it already paid. Then, when he and Jernigan picked Latoya up for dinner, he confronted Latoya about the deception and the two argued. According to defendant, Latoya was so angered that she jumped out of the car as he slowly turned toward a freeway entrance ramp. Defendant denied having any plan to kidnap and rape Latoya.

On appeal, defendant argues that he was denied a fair trial because the trial court judge, in pretrial hearings and during trial, exhibited bias against defendant. We disagree.

The question of whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo. *People v Biddles*, 316 Mich App 148, 151-152; 896 NW2d 461 (2016). Where a reviewing court determines that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

The United States and Michigan Constitutions guarantee a defendant the right to a fair and impartial trial. See US Const, Am VI; Const 1963, art 1, § 20. "A trial judge's conduct deprives a defendant of a fair trial if the conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.* at 171. When evaluating the totality of the circumstances, this Court considers (1) the nature of the trial judge's conduct, (2) the tone and demeanor of the judge, (3) the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, (4) the extent to which the judge's conduct was directed at one side more than the other, and (5) the presence of any curative instructions. *Id.* at 172-178.

A defendant must overcome a strong presumption of judicial impartiality when raising a claim of judicial bias. *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016). "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Stevens*, 498 Mich at 172-173. However, comments that are critical of or hostile to a party are generally not sufficient to pierce the veil of impartiality. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). "Moreover, partiality is not established by expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display." *People v McIntire*, 232 Mich App 71, 105; 591 NW2d 231 (1998), rev'd on unrelated grounds 461 Mich 147 (1999).

Defendant first argues that several statements made by the trial court judge during pretrial hearings demonstrated the judge's continuing bias against defendant, and indicated that the trial court judge had prejudged defendant's guilt. However, none of the judge's pretrial statements were made before the jury and therefore could not have deprived defendant of a fair trial. *People v Pointer*, 133 Mich App 313, 316-317; 349 NW2d 174 (1984). See also *Stevens*, 498 Mich at 170-171. For the same reason, defendant's claim that statements made by the trial court judge during sentencing deprived defendant of a fair trial must fail. The trial judge's comments were not made in the presence of the jury. It is therefore not reasonably likely that the trial judge's conduct improperly influenced the jury verdict.

Next, with a leaping series of inferences, defendant argues that the trial court judge's bias against defendant deprived defendant of a fair trial because it dictated the judge's decision to deny defendant's request for a competency hearing, which, in turn, prevented defendant from seeking treatment for any potential mental disorders. According to defendant, it was this lack of treatment that caused him to misunderstand the proceedings against him and attempt to represent himself during a portion of the trial, thereby diminishing the effectiveness of his trial counsel. Defendant's argument is simply meritless. Defendant has not specifically taken issue with the trial court's decision to deny the competency hearing, or offered any evidence or argument suggesting that a competency hearing was necessary in his case. To the extent defendant challenges the trial court's denial of his request for a competency evaluation, he has failed to establish a factual predicate for the claim and we consider the challenge abandoned. *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015). In any case, the trial court judge's decision to deny defendant's request for a competency evaluation is not evidence of judicial bias. "Judicial rulings . . . are not themselves valid grounds for alleging bias 'unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible.' " *Jackson*, 292 Mich App at 598, quoting *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). Here the trial court judge denied defendant's delayed request for a competency hearing before, frustrated by allegations of defendant's attempt to threaten a witness, he commented on defendant's intelligence and warned defendant that his sentence after a conviction would be harsh. The trial court judge's pointed comments, made after the judge's decision to deny the motion, do not evidence bias in the judge's decision-making, and defendant has pointed to nothing in the record that evidences deep-seated favoritism or antagonism on the part of the trial judge that would render the trial judge's exercise of fair judgment impossible.

Defendant also argues that the trial court judge exhibited bias and deprived defendant of a fair trial when he questioned witnesses at trial. Again, we disagree.

Generally, a trial court "may interrogate witnesses, whether called by itself or a party." MRE 614(b). "[T]he central object of judicial questioning should be to clarify," and "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or to elicit additional relevant information." *Stevens*, 498 Mich at 173. However, judicial questioning is not without boundaries. "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally. It is essential that the judge not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. at 174. Additionally, to ensure an appearance of impartiality, a judge should not only be mindful of the substance of his or her words, but also the manner in which they are said, and a judge should avoid questions that are intimidating, argumentative, or skeptical. *Id.* at 175. As with any claim of judicial bias, we

consider whether the trial court's questions pierced the veil of impartiality in light of the totality of surrounding circumstances. *Id*. at 180.

At defendant's trial, the prosecutor called Latoya's mother, Latanya Britton. The prosecutor examined Latanya extensively on her recollection of the events occurring on the date of the incident, and briefly asked Latanya about the nature of Latoya's relationship with Jernigan. Latanya testified that Latoya and Jernigan had been friends since eighth grade. After the witness examination concluded, the trial judge questioned Latanya regarding the exact nature of Latoya's relationship with Jernigan immediately before the alleged crime was committed:

> *The Court*: Ms. Britton, how would you characterize the relationship between your daughter, Latoya Britton, and Patricia Jernigan before [the date of the incident]?
>
> [*Latanya*]: They were like best friends.
>
> *The Court*: And when you say best friends, do you believe that they met at least once or twice a week with each other?
>
> [*Latanya*]: No.
>
> *The Court*: Were these best friends through extended like conversations and things of this nature, over the telephone or what? Describe it to me, what leads you to that conclusion. Let's put it that way.
>
> [*Latanya*]: Like I say, they were friends through all of high school. They met at eighth grade. They just - - they been friends, but some things had went on with Latoya and Patricia to where they stopped talking to each other for months and - -

At this point in the judge's questioning, defendant's trial counsel raised a hearsay objection, and the trial judge overruled it after concluding that Latanya did have personal knowledge of her daughter's friendship. The trial judge asked Latanya to continue:

> [*Latanya*]: She - - they - - you know, over the phone, they had stopped talking for a minute through some things that they were going through - -
>
> *The Court*: All right. Don't tell us what they were going through - -
>
> [*Latanya*]: Okay.
>
> *The Court*: - - but when did this difficulty begin, so to speak?
>
> [*Latanya*]: About two years; two, three years ago. That's when their relationship started really to like fade away.

Referencing testimony Latanya had provided during her examination by counsel, the trial judge then asked for some clarification:

*The Court*: Okay. All right. And did I hear you refer to Patricia Jernigan as Poo?

[*Latanya*]: Yes.

*The Court*: Had you ever heard that name before?

[*Latanya*]: No. My daughter used to call her Poo, so I called her Poo. They called her Sweetie. We called her Poo.

*The Court*: Poo. Is that from Winnie the Poo [sic], something like that?

[*Latanya*]: Yes.

Defendant objects to the trial judge's line of questioning but fails to explain how the trial judge's examination of Latanya was improper or deprived him of a fair trial. Defendant suggests that the trial judge's questioning of Latanya "elicited sympathy" because the trial judge asked Latanya to testify regarding the nicknames Latoya and Jernigan used for each other. Defendant's argument is speculative, at best. Defendant has not argued that Latanya's responses to the judge's questions were inadmissible, and defendant cites no authority for the proposition that otherwise relevant and admissible evidence is improperly admitted when it has the potential to elicit sympathy. Defendant has failed to properly develop this claim of judicial bias and we could therefore consider it abandoned. *Bosca*, 310 Mich App at 48.

However, it is clear from the record before us that there was nothing improper about the trial court judge's decision to question Latanya. It is clear that the judge's questions were intended to clarify Latanya's testimony and elicit further detail. Nothing in the judge's questioning suggested disbelief or reflected any personal view of Latanya's credibility, and there is nothing in the record indicating that the judge's tone was improper.

Defendant also argues that the trial court judge's bias was evidenced by the judge's request during trial for Latoya to walk over to the jury box and show the jury scars from the injuries she sustained during the incident. Defendant argues that although the prosecutor could "probably" have asked Latoya to show the jury her scars, the trial court judge overstepped his bounds and usurped the role of the prosecutor when he took it upon himself to make the request, demonstrating his personal bias by highlighting Latoya's injuries despite the fact that the jury had already seen them in photographs. Here again, however, the trial court's request was clearly an attempt to clarify the testimony and elicit additional relevant information. Not only was the fact of Latoya's injuries an issue for the jury, but the exact nature and extent of her injuries was in dispute. Latoya testified that she had sustained road rash burn injuries to her hands, face, and left side when she jumped from the trunk of defendant's speeding vehicle, leaving scars on those areas of her body. Defendant, testifying on his own behalf, denied that Latoya had ever been in the trunk of the car. Instead, he claimed that Latoya had been angry and jumped out of the car as it moved slowly down a service drive. The jury was faced with conflicting versions of events, and the trial judge's request for Latoya to show the jury her injuries was simply an exercise of his duty to ensure that the jury was provided with a full and accurate picture of the relevant evidence.

Considering the totality of the circumstances here, it is clear that the trial court judge's questioning of witnesses was not biased and did not create the appearance of advocacy or partiality. Throughout defendant's three-day trial, the trial court judge questioned several witnesses, interrupted both attorneys to make an accurate record, and took care to ensure that the jury could see the exhibits and hear the testimony. The trial court judge did not appear to favor either side over the other, and the questions asked by the judge do not evidence bias. After his own questioning of witnesses, the trial court judge provided each attorney and the jurors to ask further questions. Defendant has not suggested that the judge's questions were lengthy or complex given the context of the entire trial, and there is nothing in the record to demonstrate that the judge's tone or demeanor was out of order. Additionally, the trial court judge twice instructed the jury that it should not consider any questions asked by the judge as evidence or an opinion of guilt. Jurors are presumed to follow their instructions, and such a curative instruction ensures a fair trial even when there is minor or brief inappropriate conduct. *Stevens*, 498 Mich at 177-178. It is not reasonably likely that the judge's conduct had the effect of improperly influencing the jury. Defendant's claim that he was denied a fair trial because of judicial bias is without merit, and a new trial is not warranted.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-6-