# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 14, 2017

v

CONSTELLA DIONNE MANIER,

Defendant-Appellant.

No. 334504
Macomb Circuit Court
LC Nos. 2013-003359-FH
2013-004211-FH
2013-004570-FH

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

In three separate lower court cases, defendant pleaded no contest to eight counts of uttering and publishing, MCL 750.249; eight counts of forgery of a state personal identification card, MCL 28.295(1)(a); and solicitation of uttering and publishing, MCL 750.249. Defendant was sentenced on January 5, 2016, as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 30 to 240 months' imprisonment for each conviction. On June 23, 2016, defendant filed a motion for resentencing. On August 8, 2016, the trial court denied defendant's motion for resentencing. Defendant now appeals by leave granted. We affirm.

Defendant argues that this Court must remand for resentencing because the trial judge abused its discretion when it denied her motion for resentencing and engaged in impermissible judicial fact-finding to score her offense variables (OVs) under the sentencing guidelines. We disagree.

This Court reviews a trial court's denial of a motion for resentencing for an abuse of discretion. See *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017) (citation and quotation marks omitted).

This Court reviews de novo the proper interpretation and application of the statutory sentencing guidelines, MCL 777.11 *et seq*. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the

-1-

evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

"The constitutional evil addressed by the [*People v* ]*Lockridge*[, 498 Mich 358; 870 NW2d 502 (2015),] Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range." *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016). "*Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding." *Id*.

"That judicial fact-finding remains part of the process of calculating the guidelines is evidenced by the *Lockridge* Court's observation that its 'holding today does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, *whether using judge-found facts or not*.' " *Id*. at 159, quoting *Lockridge*, 498 Mich at 392 n 28 (second emphasis added by *Biddles*). "This quote from *Lockridge* is consistent and reconcilable with the full *Lockridge* opinion; judicial fact-finding is proper, as long as the guidelines are advisory only." *Biddles*, 316 Mich App at 159. The *Biddles* Court found that its point was further supported by the following discussion from *Lockridge*:

> First, the defendant asks us to require juries to find the facts used to score all the OVs that are not admitted or stipulated by the defendant or necessarily found by the jury's verdict. *We reject this option*. The constitutional violation can be effectively remedied without burdening our judicial system in this manner, which could essentially turn sentencing proceedings into mini-trials. And the United States Supreme Court . . . expressly rejected this remedy because of the profound disruptive effect it would have in every case. . . . "It would alter the judge's role in sentencing." We agree. [*Biddles*, 316 Mich App at 159-160, quoting *Lockridge*, 498 Mich at 389 (quotation marks and citation omitted; emphasis added by *Biddles*).]

"Absent the use of an admission or stipulation or a jury's factual findings to assess a defendant's OVs, the only remaining avenue available to score the OVs entails judicial fact-finding, which is of no constitutional consequence if the guidelines are merely advisory." *Biddles*, 316 Mich App at 160-161. This Court disagreed "with any contention that a trial court can only use facts determined by a jury beyond a reasonable doubt when calculating a defendant's OV scores under the guidelines." *Id*. at 161. Such a contention "is in direct contradiction of the *Lockridge* Court's rejection of the defendant's argument that juries should be required to find the facts used to score the OVs." *Id*. Therefore, defendant's argument regarding judicial fact-finding is untenable.

Defendant argues that *People v Blevins*, 314 Mich App 339; 886 NW2d 456 (2016), held in abeyance ___ Mich App ___; 884 NW2d 579 (2016), controls and that the trial court therefore erred when it did not reassess OV 13 and OV 14 at zero points because they were initially assessed based on facts not supported by defendant's pleas. Specifically, defendant cites *Blevins* for the proposition that "[t]he trial court commits plain error when it calculates an OV score

'using facts beyond those found by the jury or admitted by the defendant' if that miscalculation 'would change the applicable guidelines minimum sentence range.' " *Blevins*, 314 Mich App at 362, quoting *Lockridge*, 498 Mich at 399. We find that *Blevins* does not control in the present case, seeing as it was "strictly a case involving a constitutional challenge under *Lockridge* . . . ." *Biddles*, 316 Mich App at 159 n 5. Instead, the binding Supreme Court precedent of *Lockridge* controls; "judicial fact-finding continues to play a role in scoring the [advisory] guidelines," *id.*, as we have discussed above.

Defendant argues that the trial court improperly scored OV 13 and OV 14 and that these variables should have been assessed at zero points. Specifically, defendant argues that because the "score[s] [for] OV 13 and OV 14 were not supported by the facts contained in [defendant's] pleas in each of her cases, these variables should have been both scored at zero points and/or not used to influence her sentences." Defendant's argument, essentially, is that defendant's admissions at her plea hearings did not support the scoring of OV 13 and 14. But we have already noted that the trial court was allowed to use facts beyond defendant's admissions to score the OVs. As such, defendant's argument is without merit. For the sake of completeness, we will nevertheless review the scoring of OV 13 and 14.

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (citation and quotation marks omitted). "[I]f a defendant has effectively challenged an adverse factual assertion contained in the presentence report or any other controverted issues of fact relevant to the sentencing decision, the prosecution must prove by a preponderance of the evidence that the facts are as asserted." *Id.* (citation and quotation marks omitted). While the sentencing guidelines are advisory only, the sentencing court must take them into account when determining an appropriate sentence. *Lockridge*, 498 Mich at 391.

OV 13 addresses a continuing pattern of criminal behavior. MCL 777.43(1); *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013). The sentencing court must assess 10 points for OV 13 if it finds that "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property . . . ." MCL 777.43(1)(d). OV 14 addresses the offender's role in the offense. MCL 777.44(1); *Gibbs*, 299 Mich App at 493. "The sentencing court must assess 10 points if '[t]he offender was a leader in a multiple offender situation.' " *Id.*, quoting MCL 777.44(1)(a). When assessing OV 14, the entire criminal transaction should be considered to determine whether defendant was a leader. MCL 777.44(2)(a); *Gibbs*, 299 Mich App at 493-494. This Court has noted that "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Dickinson*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 332653); slip op at 10 (citation and quotation marks omitted). "[F]or purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave direction, 'or was otherwise a primary causal or coordinating agent.' " *Id.*, quoting *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014). "If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader." MCL 777.44(2)(b). " '[T]he plain meaning of "multiple offender situation" as used in OV 14 is a situation consisting of more than one person violating the law while part of a group.' " *Dickinson*, ___ Mich App at ___; slip op at 10,

quoting *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part 494 Mich 880 (2013). In *Dickinson*, this Court summarized the holding of the Court in *Jones*, stating that the panel "concluded that the defendant was involved in a 'multiple offender situation' even though he was accompanied by only one other person and even though the other person was not charged in connection with the crime for which the defendant was convicted." *Dickinson*, ___ Mich App at ___; slip op at 10, citing *Jones*, 299 Mich App at 287-288.

The trial court properly scored OV 13 and OV 14 at 10 points each. The trial court stated:

> Based on the information in the presentence investigative report, especially in relationship to the mother, to both her daughter and her niece, I do find that there is enough evidence to score OV 14 for a leadership role in the . . . cashing scheme . . . . So as to that, I do find that has been properly scored.

With regard to OV 13, the trial court rejected defendant's challenge to the 10-point score without elaboration.

The presentence investigation report included the following information: Sterling Heights Police determined that between April 29, 2013, and May 17, 2013, defendant and defendant's daughter Dacia Manier ("Dacia") used forged state identification cards and false checks to purchase merchandise at a Target store. Defendant's and Dacia's forged state identification cards had the names "Tijuana McGrewn" and "Courtney Christian" on them.

On June 9, 2013, Clinton Township Police Department officers went to a Target store based on information that fraudulent checks were used in the store. A Target employee told officers that three females arrived in a red Toyota Camry and used fraudulent checks. The Target employee indicated to officers that the red Camry was still parked in the adjoining parking lot near another store. When officers found the red Camry, they found defendant seated in the front passenger seat. Defendant told the officers that she, Dacia, and her niece Tyshia Lacey ("Lacey") had shopped at Target. The Target employee told the officers that after defendant, Dacia, and Lacey arrived at Target, they separated, filled their respective shopping carts with merchandise, and went to separate registers and paid with fraudulent checks. The Target employee indicated that defendant paid for her merchandise under the name "Tajuana Lavette McGrewn." Target's computer system warned of possible fraudulent activities associated with the name Tajuana Lavette McGrewn. The routing numbers on all of the checks cashed by defendant, Dacia, and Lacey were the same and matched previous fraudulent reports within Target's computer system. Upon an inventory search of the Camry, officers found Michigan paper identifications for Tajuana Lavette McGrewn, "Monica Payne," "Laquita Alberta Larkins," and "Courtney Christian." Officers also found within the Camry blank checks with Payne, McGrewn, Larkins, and Christian listed as the account holders and the merchandise that had been purchased with the fraudulent checks.

Finally, on September 15, 2013, Arnasian Hunter ("Hunter") cashed a fraudulent check at a wine shop. After the check was determined to be fraudulent and Hunter was found and questioned, officers with the Warren Police Department learned that Hunter was approached by defendant regarding a moneymaking opportunity. Hunter told officers that defendant provided

her with a forged National Coney Island check and had driven her to the wine shop to cash the check. Defendant had allegedly told Hunter that defendant's brother was a manager at National Coney Island and that they needed Hunter's assistance because the restaurant was short-staffed. Additionally, the wine shop had a picture of defendant inside the store immediately after the fraudulent check was cashed.

With respect to OV 13, defendant was convicted of eight counts of uttering and publishing, eight counts of forgery of a state personal identification card, and one count of solicitation of uttering and publishing. The offenses in this case arose out of three separate criminal episodes, one of which spanned approximately half a month, and resulted in the commission of 17 separate acts. "[A]lthough some subsections of MCL 777.43 contain limitations on a trial court's ability to score for more than one instance arising out of the same criminal episode, subsection (1)(c) contains no such limitation." *Gibbs*, 299 Mich App at 488. Nor is there such a limitation in the present case. "Accordingly, because multiple concurrent offenses arising from the same incident are properly used in scoring OV 13, the trial court did not err by assessing" 10 points for that variable. *Id.*

With respect to OV 14, when considering the entire criminal transactions, the trial court did not err in finding that defendant was "a leader in a multiple offender situation . . . ." MCL 777.44(2)(a). During each instance of criminal activity, defendant violated the law while she was a part of a group consisting of more than one person. *Dickinson*, ___ Mich App at ___; slip op at 10. Therefore, defendant was involved in multiple offender situations.

The trial court determined that the information in the PSIR, "especially in relationship to the mother, to both her daughter and her niece," was sufficient "to score OV 14 for a leadership role in the . . . cashing scheme . . . ." Defendant carried out criminal acts with her daughter and niece while she occupied a position referred to by defense counsel as "the matriarch of the organization . . . ." On top of being the mother and aunt of the other two actors in the June 9, 2013, cashing scheme, defendant also participated in the April 29, 2013, to May 17, 2013, cashing scheme with her daughter. Being her mother, and the "matriarch of the organization," defendant was in a position to guide, direct, and show Dacia how to commit the criminal acts. *Id.* At the time of the April, May, and June crimes, Dacia was 19 years old. Dacia's young age lends itself to finding that defendant led her. The fraudulent check scheme was conducted with counterfeit state identification cards and forged checks with names matching the counterfeit state identification cards. The trial court could have reasonably determined that, in light of her position as the "matriarch of the organization," defendant, an individual with a long history of conducting criminal acts, including many prior instances of uttering and publishing, was likely to have been a leader of the situations involving her daughter and niece.

Further, defendant's actions with respect to the September 15, 2013, solicitation of uttering and publishing demonstrate her position as leader. Defendant approached Hunter, asked her to take part in the cashing scheme, provided her with a forged check, and drove her to a wine shop to cash the forged check.

Defendant lastly argues that the trial court erred in denying her motion for resentencing because the trial court had an "obligation to determine whether [the] sentences would have been

different had [the trial court] known that the sentencing guidelines were only advisory and not relied on facts which were not supported by [defendant's] pleas beyond a reasonable doubt."

We have already addressed, above, the issue of judge-found facts. In addition, the trial court's statements indicated that it was well aware of the advisory nature of the sentencing guidelines at the time it sentenced defendant. The Court stated that it was aware of the *Lockridge* decision on "the day that it came out."[1] *Lockridge* was decided on July 29, 2015, and defendant was sentenced on January 5, 2016. There is no basis for reversal.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[1] Even assuming, arguendo, that the trial court had not been aware of the advisory nature of the guidelines at the time of sentencing, the court clearly and unambiguously stated at the hearing on the motion for resentencing that the sentence was appropriate in light of the advisory nature of the guidelines.