*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONOVAN JAMAL SWIFT,

Defendant-Appellant.

UNPUBLISHED
February 28, 2019

No. 339801
Wayne Circuit Court
LC No. 17-001759-01-FC

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by jury of carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 18 months to 5 years' imprisonment for the carrying a concealed weapon conviction, to run concurrently with a two-year sentence for the felony-firearm conviction. Defendant appeals by right, challenging the scoring of two offense variables (OVs) as well as the imposition of court costs. We affirm.

## I. BACKGROUND

Defendant was charged with first-degree murder, MCL 750.316, assault with intent to commit murder, MCL 750.83, carrying a concealed weapon, and felony-firearm in connection with the shooting death of Robert Harris and the assault of Timothy Kennedy. On the day in question, defendant visited Kennedy at a home he shared with Harris to settle a dispute over money; defendant was with his nephew, Carlos Washington. Kennedy testified for the prosecution, and Washington testified for the defense. The two witnesses agreed that defendant took a swing at Kennedy. Kennedy testified that defendant then pulled a gun and fired shots in the direction of Harris. Washington testified that Harris was the first to pull a gun and that the shooting began as defendant was pushing Washington out of the home.

Kennedy testified that he retreated to the kitchen, that defendant fled after firing four or five shots and that he heard shots fired from a second gun as well. When Kennedy returned to the room he found that Harris had been shot and had a gun in his hand. Kennedy further testified that before defendant drove away, another three shots were fired into the home from outside.

-1-

Harris was later pronounced dead, and defendant, who had been shot in the leg, went to the emergency room, where he was subsequently arrested. Defendant claimed self-defense, and the jury acquitted him of murder and assault with intent to commit murder, but found him guilty of the remaining charges.

## II. ANALYSIS

### A. OFFENSE VARIABLES

Defendant argues that the trial court incorrectly scored OV 3 and OV 9. We disagree.

When the scoring of the sentencing guidelines is challenged, "the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hutchinson*, 308 Mich App 10, 12-13; 865 NW2d 44 (2014). We review de novo whether the court's factual findings satisfy the statutory scoring conditions. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

"Offense variable 3 is physical injury to a victim." MCL 777.33(1). The trial court assessed defendant 100 points under OV 3, which is appropriate when "[a] victim was killed." MCL 777.33(1)(a). The statue further provides that a court should score 100 points "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b). Stated differently, "the defendant's criminal actions must constitute a factual cause of a death for purposes of OV 3." *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012). OV 3 must be scored based on the sentencing offense alone, *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016), which in this case was carrying a concealed weapon. However, in scoring an offense specific OV, "a trial court may properly consider all of defendant's conduct during that offense." *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citations omitted).

Defendant contends that his conduct relating to the carrying a concealed weapon conviction did not cause or result in anyone's death. To the contrary, there was sufficient evidence presented for the trial court to conclude that defendant's conduct was a factual cause of Harris's death.[1] Defendant did not dispute that he shot and killed Harris with a weapon that he was carrying in violation of MCL 750.227. Thus, defendant's illegal conduct was a but-for cause of Harris's death. Had defendant not been carrying a concealed weapon, he would have been unable to kill Harris.

Defendant argues that this case is analogous to *Biddles*, 316 Mich App at 164-165, in which this Court found error in the assessment of OV 3 at 100 points when a homicide occurred and the defendant was convicted of felon in possession of a firearm. However, in *Biddles* there

---

[1] In scoring the OVs, the trial court was not limited to facts found by the jury or admitted by the defendant. Even after *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), a trial court may engage in judicial fact finding when calculating the sentencing guidelines. See *id*. at 392 n 28.

was no evidence that the defendant fired his weapon. *Id*. In contrast, the evidence in this case establishes that defendant used his firearm to kill Harris.

Next, defendant argues that the trial court erred in scoring OV 9 at 10 points. "Offense variable 9 is number of victims." MCL 777.39(1). The trial court must assess 10 points for OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." MCL 777.39(1)(c). The statute instructs the sentencing court to "count each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).

Defendant argues that the trial court could not have found that anyone was placed in danger of physical harm because the sentencing offense, carrying a concealed weapon, involves only carrying the weapon and not placing anyone in danger. Again, we may consider defendant's conduct during the sentencing offense. *Chelmicki*, 305 Mich App at 72. Defendant does not dispute that he fired shots at Harris. Although the jury may have found that defendant acted in self-defense, this does not change the fact that defendant's carrying of a concealed weapon placed Harris in danger of physical injury of death. The evidence also establishes that Kennedy was in the room when the shooting began, and therefore defendant's conduct also placed him at risk. Thus, two individuals were endangered by defendant carrying the firearm, which occurred contemporaneously with the shooting. The trial court did not err in assessing 10 points for OV 9.

## B. COURT COSTS

Lastly, defendant argues that the trial court erred in imposing $1,300 in court costs without establishing that they were related to actual costs incurred by the court. Because defendant did not raise this issue before the trial court, our review is for plain error. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

"If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty," the trial court must impose "minimum state costs" and may impose various other costs. MCL 769.1k(1)(a)-(b). Relevant to this appeal are the costs that a trial court may impose pursuant to MCL 769.1k(1)(b)(*iii*), which provides as follows:

> Until October 17, 2020, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:
>
> > (A) Salaries and benefits for relevant court personnel.
> >
> > (B) Goods and services necessary for the operation of the court.
> >
> > (C) Necessary expenses for the operation and maintenance of court buildings and facilities.

By the statute's plain language, a court is not required to separately calculate the costs incurred for each trial. Nonetheless, we have held that a trial court must "establish a factual basis" for the costs imposed pursuant MCL 769.1k(1)(b)(*iii*). *Konopka (On Remand)*, 309 Mich

App at 359. The State Court Administrative Office (SCAO) has "recommended that circuit courts calculate costs for purposes of MCL 769.1k(1)(b)(*iii*) 'by taking the average of actual costs times the percent of [the] workload for [the] criminal [division] divided by the average number of criminal cases disposed.' " *People v Cameron*, 319 Mich App 215, 225; 900 NW2d 658 (2017). In *Cameron*, 319 Mich App 215, we concluded that there was a sufficient factual basis for the imposed court costs when they were based on the cost of the circuit court's average felony case. *Id*. at 219, 226.

In this case, the prosecutor provides on appeal information from SCAO estimating Wayne Circuit Court's cost per criminal case at $1,302. Ideally, the trial court would have noted on the record that it was relying on this calculation. But given that defendant did not object to the imposition of costs at the time of sentencing, we decline to hold that the trial court plainly erred in failing to do so.

Affirmed.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola