# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SCOTT ODELL CLARK,

Defendant-Appellant.

UNPUBLISHED
October 25, 2018

No. 338868
Saginaw Circuit Court
LC No. 16-042278-FC

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a, assault with intent to rob while armed, MCL 750.89, possession of a firearm by a felon, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 35 to 70 years for the conspiracy and assault convictions, 5 to 10 years' imprisonment for the felon-in-possession conviction, and to 2 years in prison for each of the felony-firearm convictions, to be served concurrently to each other and consecutively to the other sentences. Defendant appeals as of right, and we affirm.

Defendant and some acquaintances, including Tyler Patrick, met at the home of an individual who began discussing a plan to rob a woman who was coming to the home to buy some heroin, with the individual providing a gun to Patrick and defendant to carry out the robbery. The conspiratorial plan entailed Patrick meeting the female purchaser and robbing her at gunpoint, while defendant was to remain close by to act as "muscle" and a lookout in case anything went wrong. The female purchaser, who was actually an undercover police officer working with a narcotics enforcement team as part of a sting operation, arrived at the home in a vehicle. Patrick entered the car, attempted to rob the undercover officer at gunpoint, and was promptly disarmed by the undercover officer after another officer hiding in the backseat emerged and placed a rifle to Patrick's face. The undercover officer and surrounding surveillance units spotted an individual fitting defendant's general physical description walking near and around the vehicle about the time of the robbery, although defendant then walked away and was not apprehended at that point. There was testimony that defendant had been wearing a bandana over his face, and afterward police found a bandana nearby matching the one seen covering

-1-

defendant's face. DNA swabbed from the bandana matched defendant's DNA profile, along with two other unknown persons. Defendant's phone records placed his phone in the area of the crime during its occurrence.

On appeal, defendant first argues that he was denied his due process right to a fair trial, where the presiding judge knew the undercover officer as the daughter of another judge in the same circuit court, and where the presiding judge conducted himself in the manner of an advocate for the prosecution when asking questions of the undercover officer, improperly influencing the jury. Defendant contends that the trial judge was not impartial.

With respect to the undercover officer being the daughter of another circuit court judge, defendant raised the issue at the start of trial, but did not move to disqualify the trial judge under MCR 2.003. Instead, defense counsel simply brought the matter to the trial judge's attention, indicating that counsel did not know the level of familiarity between the presiding judge and the undercover officer. The trial judge stated that he did not have a personal relationship with the officer, that the jury, not the judge, would be determining guilt or innocence, and that he saw no potential conflict. Defense counsel replied that he would rely on the trial judge's assessment. It would thus appear that defendant affirmatively waived any claim of bias or conflict of interest, such that disqualification should have occurred. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (explaining the doctrine of waiver). Moreover, there was no compliance whatsoever with the procedures outlined in MCR 2.003 (disqualification of judge), and in his appellate brief, defendant does not develop the argument, failing to cite any authorities or to engage in any legal analysis. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (issues not adequately briefed are deemed abandoned).

Defendant argues that trial counsel was ineffective for failing to move for disqualification; however, a claim of ineffective assistance is not contained in defendant's statement of questions involved on appeal, MCR 7.212(C)(5), thereby failing to preserve the argument, *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). Regardless, we cannot conclude that trial counsel's performance was deficient, considering that defendant fails to establish the factual predicate of his claim, as there is no showing of any bias or conflict of interest that would have necessitated a motion for disqualification. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant fails entirely to articulate an argument, factually or legally, why the trial court should have been disqualified merely because another circuit judge's daughter was a witness in the case. Defendant does not present any claim or evidence to counter the trial judge's assertion that he did not have a personal relationship with the undercover officer, that he did not know anything about her beyond the fact that she was a police officer and the daughter of a colleague, and that he saw no potential conflict. Reversal is unwarranted.

With respect to whether the trial court's questioning of the undercover officer was improper, we note the following guiding principles set forth in *People v Biddles*, 316 Mich App 148, 151-152; 896 NW2d 461 (2016):

> The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial

bias. To determine whether the trial judge's conduct deprived defendant of a fair trial, we consider whether the trial judge's conduct pierced the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. This is a fact-specific inquiry, and we must consider the cumulative effect of any errors. A single instance of misconduct generally does not result in the appearance that a trial judge is biased, unless the instance is so egregious that it pierces the veil of impartiality. To evaluate the totality of the circumstances, we consider a variety of factors, including

"the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." [Citations, quotation marks, and alteration brackets omitted.]

"The court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). Indeed, a court must control the mode of interrogating witnesses so as to "make the interrogation . . . effective for the ascertainment of the truth[.]" MRE 611(a). The main objective of judicial questioning should be clarification, and "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit relevant information." *People v Stevens*, 498 Mich 162, 173; 869 NW2d 233 (2015). "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

We have of course reviewed the entirety of the undercover officer's testimony, including those portions in which she responded to questions posed by the trial court, and the questions quite clearly sought to elicit testimony in order to provide clarity and to produce fuller and more exact testimony. The trial court did not pierce the veil of judicial impartiality. The examination of the undercover officer by the court provided clarity with respect to how the officer was parked in relation to the house, the physical landscape around the vehicle, the timing and sequence of events as they transpired, the position of the officer in relation to Patrick and defendant throughout the entire episode, the movements of the officer, Patrick, and defendant, the bandana covering defendant's face, defendant's appearance and dress, the focus of defendant's and the officer's attention, and how she disarmed Patrick. The trial court sought to elicit information regarding the intricacies of the crime scene and of the participants' movements; there was no appearance of advocacy for the prosecution or partiality against defendant. The questions were of a type that the answers could have just as easily been favorable to defendant, and the fact that

they were not for the most part does not mean that the trial court pierced the veil of judicial impartiality. The trial court's examination served the purpose of ascertaining the truth.[1]

Finally, defendant argues that he was denied his due process right to a fair trial when the prosecutor elicited testimony from the undercover officer which indicated that defendant would have had reason to know the officer because she had previously executed a search warrant at his residence and had testified against him in court as a police officer. Defendant contends that the testimony was inadmissible under MRE 404(b) and that trial counsel was ineffective for failing to object to the evidence on the basis of MRE 404(b), considering that the testimony had no relevancy, other than to improperly show that defendant had a propensity to commit crimes. We initially hold that, assuming plain error or deficient performance by counsel, the requisite prejudice simply cannot be established. *Carbin*, 463 Mich at 600; *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant was charged, in part, with being a felon in possession of a firearm. The trial court instructed the jury that "[t]he parties have stipulated that the defendant was convicted of a prior specified felony and that he has not met the requirements to regain eligibility to possess a firearm . . . ." Accordingly, even had the challenged testimony been excluded, the jury would still have been apprised of the fact that defendant had been through the criminal justice system, resulting in a felony conviction.[2] We surmise that the jury likely concluded that the undercover officer's testimony about her past exposure to defendant related to defendant's status as a "felon."

Furthermore, the challenged testimony was not admitted for purposes of showing propensity, but served the purpose, as argued by the prosecutor in his closing, of explaining why defendant may have walked away from the scene after coming close to the car. In turn, not wanting to be seen by an officer whom he knew to be an officer would suggest that it was indeed defendant acting as muscle and a lookout, i.e., proving "identity," and would additionally suggest that defendant had the necessary "intent" to assist in the crime, given that had defendant been innocently present, he would not have felt the need to flee an officer. MRE 404(b)(1) (other-acts evidence may be admissible "as proof of . . . intent . . . [and] identity"). The evidence was offered for a proper purpose, it was relevant under MRE 401 and 402, and its probative value was not substantially outweighed by the danger of unfair prejudice, MRE 403. See *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017). Accordingly, there was no plain error in allowing the testimony, *Carines*, 460 Mich at 763-764, and trial counsel's performance was not

_____

[1] Defendant complains about one statement made by the trial court during the testimony of a male detective, wherein the prosecutor inadvertently referred to the detective using the name of the female undercover officer, followed by the court stating, "He's not nearly that cute." We view this statement as nothing more than an attempt at levity that was better left unsaid. This brief, isolated statement was not so egregious as to pierce the veil of judicial impartiality. *Biddles*, 316 Mich App at 151-152.

[2] Recognizing the potential harm to defendant based on the stipulation, defense counsel, in closing argument, implored the jury that a past wrong does not prove that defendant committed the charged crimes.

deficient, as counsel need not make futile or meritless objections, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). With respect to defendant's associated argument that the prosecutor did not provide the required notice for introducing other-acts evidence, MRE 404(b)(2), he has not shown or argued that he would have proceeded any differently at trial had the notice been given, so reversal is unwarranted. *People v Dobek*, 274 Mich App 58, 87-88; 732 NW2d 546 (2007).

Affirmed.

/s/ William B. Murphy
/s/ Anica Letica