*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 26, 2019

Plaintiff-Appellee,

v

No. 343848
Genesee Circuit Court
LC No. 16-040024-FC

BRADFORD DUANE JOHNSON,

Defendant-Appellant.

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

A jury convicted defendant, Bradford Duane Johnson, of felon in possession of a firearm (felon-in-possession), MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, in connection with a shooting of a man in the back. The jury acquitted defendant of assault with intent to murder (AWIM), MCL 750.83. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, and ordered him to serve 36 to 90 months in prison for his felon-in-possession, felon in possession of ammunition, and CCW convictions, and to serve a consecutive term of two years for his felony-firearm conviction. Defendant appeals as of right. We vacate defendant's sentence and remand for resentencing.

## I. FACTS

On May 31, 2016, Genesee County Dispatch received calls reporting a shooting and that the victim, Darryl Russell, lay on the ground in the Shiloh Baptist Church parking lot. A responding police officer found Russell with a bleeding gunshot wound to his back and asked who shot him. Russell stated "Wheezy," one of the nicknames used by defendant. Russell told the officer that defendant fled in a white Chrysler 300. The investigating officer found a spent .223-caliber bullet casing at the scene. Another officer dispatched to the scene found eight .223-caliber casings in the roadway.

Police officers from the Michigan State Police and the Flint Police Department were dispatched to 901 Damon Street following a report of a white Chrysler 300 parked outside the

house. Defendant and four other people were found in the house. The police officers observed brass shell casings in another vehicle parked outside the house and a rifle casing inside the white Chrysler 300. Inside the house, police found shotgun shells, a pistol barrel, cell phones, and a black digital scale with white residue.

Police apprehended Howard Reed, Jr. on the night of the incident and later charged him with AWIM, felon-in-possession, felon in possession of ammunition, CCW, felony-firearm, and accessory after the fact. Reed pleaded guilty to the charges of CCW, accessory after the fact, and felony-firearm. The trial court sentenced him to 36 months' probation plus the mandatory two years' imprisonment for the felony-firearm conviction.

Reed testified that he and defendant were close friends and that they spent time together during that day. Reed drove to 901 Damon Street in his white Chrysler 300; and later that evening, he and defendant went to a party store where he saw defendant and Russell talking to each other. After both defendant and Russell left the store, Reed drove to McClellan Street with defendant in the passenger seat. Defendant told Reed that Russell owed him $15, but Russell did not have the money. As Reed drove on McClellan Street with defendant, he had his music turned up loudly. He heard approximately three or four shots and thought someone shot at his car, but he then heard three more shots fired, and noticed defendant shooting out of his car. Reed grabbed defendant's shoulder and pulled him back into the car, chastised him for shooting out of his car, and drove to 901 Damon Street. Defendant went inside the house with a gun. When the police arrived, Reed ran away because he feared what the police would do.

Russell testified that he owed defendant $15 for a cocaine purchase and when asked by defendant about payment he promised to get the money. When Russell left the party store, he saw defendant and Reed in a white Chrysler 300. As Russell walked down McClellan Street, he saw a car creeping with its headlights off but recognized the Chrysler from the party store earlier that night. Russell took off running and he heard gunshots. One of the shots hit Russell in the lower back. He heard three or four more shots and tires screeching as the car sped away. Russell testified that he suffered broken ribs, lung and kidney damage.

## II. ANALYSIS

### A. OV 1 AND OV 3

Defendant argues that the trial court erred by assessing 25 points each for Offense Variables (OV) 1 and 3 which inflated his total OV score, resulting in a higher sentencing guidelines minimum range and the imposition of an incorrect sentence. We agree.

We review de novo a trial court's interpretation and application of the sentencing guidelines, MCL 777.1 *et seq. People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009) "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* "Clear error exists

when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

At sentencing, the trial court assessed 25 points each for OV 1 and for OV 3. Defendant contested the scores, arguing that, under *McGraw*, OV 1 and OV 3 may be scored only on the basis of the sentencing offense, and that the sentencing offense—felon-in-possession—did not involve the discharge of a firearm. The prosecution argued that defendant had "ongoing possession of the weapon" during the shooting and that the sentencing offense was not completed until defendant arrived at the house on Damon Street after the shooting. The prosecution additionally argued that 25 points should be assessed for OV 3 because 25 points were assessed for OV 3 at Reed's sentencing "for the same class of a felony."

OV 1 may be scored for aggravated use of a weapon. MCL 777.31(1). Under MCL 777.31(1)(a), a defendant may be assessed 25 points if during commission of a felony "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon". MCL 777.31(2)(b) provides that in "multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points."

OV 3 may be scored in cases involving physical injury to a victim. MCL 777.33(1). Under MCL 777.33(1)(c), a defendant may be assessed 25 points when during commission of a felony "[l]ife threatening or permanent incapacitating injury occurred to a victim". Under MCL 777.33(2)(a), in "multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders must be assessed the same number of points."

"Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *McGraw*, 484 Mich at 135. Offense variables 1 and 3 are offense-specific "*McGraw* variables" that must be scored only on the basis of conduct occurring during the commission of the sentencing offense. *People v Biddles*, 316 Mich App 148, 164-165; 896 NW2d 461 (2016). See also *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014). "However . . . a trial court may properly consider all of [the] defendant's conduct during that offense." *Id*. at 71-72 (quotation marks and citation omitted). "The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced." *McGraw*, 484 Mich at 122 n 3.

In *Biddles*, 316 Mich App at 164, the defendant was acquitted of second-degree murder, assault with intent to commit murder, and felony-firearm, and the jury convicted him only of felon-in-possession. One hundred points were assessed for OV 3 because the victim was killed. *Id*. at 162. This Court held that 100 points were improperly assessed defendant for OV 3 because

> looking solely at defendant's conduct, our analysis of whether "[a] victim was killed," MCL 777.33(1)(a), and whether the "death result[ed] from the commission of a crime," MCL 777.33(2)(b), does not support a conclusion that the death in this case resulted from or was factually caused by defendant's

commission of the offense of felon-in-possession. [*Id.* at 164-165 (citation omitted, alterations in original).]

This Court noted that the defendant's conviction of felon-in-possession rested on testimony of one witness who saw a man in a white shirt holding a gun and the codefendant's testimony that the defendant wore a white shirt at the time of the incident. *Id.* at 165. This Court stated, "There was no evidence, let alone a preponderance of it, establishing a causal connection between defendant's crime of felon-in-possession and [the victim's] death." *Id.* This Court explained that the trial court clearly erred to the extent that it relied on MCL 777.33(2)(b), the multiple offender provision, in assessing the defendant 100 points for OV 3 because his codefendant who pleaded guilty to the charges against him had been assigned 100 points for OV 3. *Id.* at 163. This Court clarified that Biddle's case

> was not a multiple-offender case because defendant was acquitted of second-degree murder, assault with intent to commit murder, and felony-firearm, because the felon-in-possession conviction was based on evidence apart from the shooting, and because codefendant Johnson was convicted by plea of the crimes for which defendant was acquitted. Had defendant been convicted of assault with intent to commit murder as was his codefendant, then an assessment of 100 points for OV 3 would have been proper. However, the multiple-offender provision of OV 3 was not implicated in this case. [*Id.* at 164 (citations omitted).]

Similarly, respecting assessment of points for OV 1, this Court held that

> there was no evidence that defendant's possession of the gun, which was used to support the felon-in-possession conviction, entailed defendant's discharge of the weapon, let alone discharging it at or toward a human being. The trial court thus clearly erred by assessing 25 points for OV 1 . . . . [*Id.* at 166.]

In this case, the jury acquitted defendant of the only offense to which the discharge of a firearm or injury to a victim were relevant—the AWIM charge. Similar to *Biddles*, looking solely at defendant's conduct during the sentencing offenses, the trial court could not properly conclude that defendant's conduct involved the discharge of a firearm or injury to a victim because of defendant's mere possession of a firearm and ammunition which served as the basis for his convictions of felony-firearm, felon-in-possession, and CCW. Defendant's commission of the sentencing offenses did not entail the discharge of the firearm nor had any causal connection with Russell's injury. *Biddles*, 316 Mich App at 165-166.

Moreover, our Supreme Court clarified recently in *People v Beck*, ___ Mich ___; ___ NW2d ___ (2019), a case similar to this case, where a jury acquitted the defendant of open murder but the sentencing judge imposed a sentence for that crime, that because:

> the sentencing court punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him, it violated the defendant's due-process protections.

We hold that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted. [*Id*. at ___; slip op at 21-22.]

Consequently, our Supreme Court vacated the defendant's sentence for felon-in-possession and remanded the case to the trial court for resentencing. Under *Beck*, defendant's due process rights were violated when the trial court assessed points for OVs 1 and 3 and imposed a sentence based on the offense for which the jury acquitted him.

Reduction of the 50 points erroneously assessed for OVs 1 and 3 results in a change in the applicable guidelines range because his OV total would equal zero placing him in the OV Level I instead of Level V, resulting in a minimum sentence range of 7 to 28 months. Because the scoring errors affected the guidelines range, and because there is no indication that the trial court, in the exercise of its discretion, would have imposed the same sentence in the absence of these scoring errors, defendant is entitled to remand for resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## B. SENTENCE ENHANCEMENT

In a Standard 4 brief, defendant raises unpreserved claims that the prosecutor failed to timely file the notice of intent to seek a sentence enhancement and that trial counsel provided ineffective assistance by failing to address this issue. We disagree.

Unpreserved claims of error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, defendant bears the burden of establishing (1) that an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected his substantial rights. *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). We are required to exercise "discretion in deciding whether to reverse" and reversal "is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Generally, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *Id*. at 188. However, because "no factual record was created with respect to defendant's claim . . . this Court's review is limited to mistakes apparent on the lower court record." *Id*.

MCR 6.113(E) states:

A circuit court may submit to the State Court Administrator pursuant to MCR 8.112(B) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to

give the defendant a copy of the information and any notice of intent to seek an enhanced sentence, as provided in MCR 6.112(F).

MCR 6.112(F) states:

> A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or *eliminated as allowed under MCR 6.113(E)*, within 21 days after the filing of the information charging the underlying offense. [Emphasis added.]

The Genesee County Circuit Court eliminated circuit court arraignments through its local administrative order LAO #11-04. On September 15, 2016, the prosecutor filed both the felony information and a notice of intent to seek sentence enhancement. In so doing, the prosecutor timely filed the notice within 21 days after the filing of the information as required by MCR 6.112(F). Defendant's claim of error, therefore, lacks merit. Consequently, defendant's claim that his trial counsel provided ineffective assistance by not raising the notice filing issue also lacks merit because a defendant's trial counsel had no obligation to advocate a meritless position. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Accordingly, defendant is not entitled to relief in this regard.

We vacate defendant's sentence respecting his convictions of felon-in-possession, felon in possession of ammunition, and CCW[1] and remand to the trial court for resentencing. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

---

[1] Defendant's conviction of felony-firearm is not subject to the sentencing guidelines because it carries a mandatory sentence of two years' imprisonment. See MCL 750.227b(1); MCL 777.16m.