*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2021

Plaintiff-Appellee,

v

No. 350103
Macomb Circuit Court

DAVID MICHAEL HULT,

LC No. 2018-003221-FC

Defendant-Appellant.

Before: K.F. KELLY, P.J., AND STEPHENS AND CAMERON, JJ.

PER CURIAM.

Defendant, David Hult, was convicted by a jury of unlawfully driving away an automobile ("UDAA"), MCL 750.413. Hult was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 6 to 30 years' imprisonment. We vacate Hult's sentence and remand to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from an incident in which the 81-year-old victim's vehicle was stolen from a Kroger parking lot in Sterling Heights. The victim testified that, when she was returning her cart, a man approached her and shoved the cart, knocking her to the ground. The man tried to take the victim's purse but was unable to untangle it from her arm. The man then removed the victim's keys from a lanyard that was around her neck and drove away in her vehicle. Law enforcement was contacted. An officer who responded to the scene was provided with a description of the perpetrator. In relevant part, the perpetrator was said to be a white male who was wearing a black baseball cap.

The police located the victim's vehicle a short period of time later in a neighborhood in Detroit. The vehicle was impounded so that it could be processed for evidence. The police apprehended Kenneth Fox, who matched the description of the perpetrator, from a street near where the victim's vehicle was located. Fox convinced the police that he did not steal the victim's vehicle, and he was released. The police subsequently showed the victim a photographic lineup, and she selected Fox as the perpetrator. Fox was arrested, and he again denied involvement. Fox voluntarily submitted to analyses of his DNA and his cellphone. Analyses of DNA samples taken

-1-

from the interior of the victim's vehicle yielded very strong to moderate support that Fox was not a contributor to any of the samples. However, a sample taken from an orange baseball cap that was recovered from the floor of the victim's vehicle was matched to Hult through a DNA database. Cellular analysis further implicated Hult, and Hult was charged with carjacking, MCL 750.529a. The jury acquitted Hult of carjacking, but convicted him of UDAA. Hult was sentenced as described above, and this appeal followed.

## II. ANALYSIS

### A. SENTENCING—CONSIDERATION OF ACQUITTED CONDUCT

Hult argues that the trial court erred when it sentenced him. More specifically, Hult argues that the trial court erred when it scored offense variables ("OVs") 3, 4, and 10 on the basis of acquitted conduct and considered the "totality of the circumstances" when deciding his minimum sentence.

We review constitutional issues, such as due process challenges, de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "[D]ue process is satisfied as long as the sentence is based on accurate information and the defendant has a reasonable opportunity at sentencing to challenge that information." *People v Williams*, 215 Mich App 234, 236; 544 NW2d 480 (1996). This Court reviews de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). " 'Preponderance of the evidence' means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008) (citation omitted).

Although the sentencing guidelines are advisory, *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), a sentencing court "must consult and consider the applicable sentencing-guidelines range," *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019). "The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense. The primary focus of the offense variables is the nature of the offense[.]" *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Allen*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 342999), slip op at 4, lv pending (quotation marks and citation omitted). However, "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). "When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he

-2-

engaged in that conduct using a preponderance-of-the-evidence standard." *Id*. at 626. However, "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." *Id*.

In *People v Roberts (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 339424); slip op at 5, rev'd by *People v Roberts*, ___ Mich ___ (Docket No. 161263, entered October 21, 2020), this Court inferred from *Beck* that "a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense proved beyond a reasonable doubt." This Court further concluded that "*Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *Roberts (On Remand)*, ___ Mich App at ___; slip op at 5. Specifically, the *Roberts* Court held as follows:

> Nothing in *Beck* precludes a sentencing court from generally considering the time, place, and manner in which an offense is committed. We conclude that *Beck* does not exclude from consideration the contextual fact that the acquitted conduct was committed by someone, so long as that conduct is not actually attributed to the defendant. [*Id*. at ___; slip op at 5.]

In a peremptory order, however, our Supreme Court reversed this Court's decision in *Roberts*, seemingly concluding that some contextual facts upon which this Court relied were, in fact, part of the conduct of which the defendant had been acquitted. *People v Roberts*, ___ Mich ___; ___ NW2d ___ (Docket No. 161263, entered October 21, 2020). Peremptory orders from our Supreme Court are binding precedent "to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions." See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018). Based on our Supreme Court's decision to reverse *Roberts*, it appears that the prohibition in *Beck* extends to circumstances surrounding the sentencing offense if the circumstances concern acquitted conduct that the sentencing offense does not contemplate.

In this case, Hult was acquitted of carjacking, but convicted of UDAA. The elements of carjacking are "(1) that the defendant took a motor vehicle from another person, (2) . . . [who was] in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998).[1] In contrast, "[t]he essential elements of UDAA are (1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993).

By convicting Hult of UDAA but acquitting him of carjacking, the jury found beyond a reasonable doubt that Hult took possession of the victim's vehicle and drove away without authority or permission. However, the jury found that Hult did *not*, beyond a reasonable doubt, do so "either by force or violence, by threat of force or violence, or by putting the [victim] in fear."

---

[1] 2004 PA 128 removed the requirement that the victim be physically present at the taking of the vehicle.

See *Davenport*, 230 Mich App at 579. Consequently, the trial court was prohibited from considering at sentencing any act that might establish, by a preponderance of the evidence, the assault element of carjacking.

### 1. OV 3

Hult argues that the trial court erred by assessing 10 points for OV 3, which is scored for "physical injury to a victim." MCL 777.33(1). Ten points are assessed for OV 3 when "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d). "[T]he term 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v Lampe*, 327 Mich App 104, 112-113; 933 NW2d 314 (2019) (quotation marks and citation omitted). The requirement contained in OV 3 that the bodily injury require medical treatment "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). Courts can only "take into consideration [the] defendant's sentencing offense for purposes of scoring OV 3." *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016).

At trial, the victim testified that her head and back were hurt after Hult pushed her down in the parking lot. Evidence supported that the victim was hospitalized and received prolonged medical attention as a result of her injuries. The victim's impact statement in the presentence investigation report references injuries that the victim suffered as a result of the "attack," which the victim indicates consisted of Hult pushing her to the ground and pulling the lanyard that was around her neck. As already stated, however, the alleged assault on the victim was part and parcel of the offense of carjacking. By acquitting Hult of that crime, the jury necessarily found that Hult did not take possession of the victim's vehicle "either by force or violence, by threat of force or violence, or by putting the [victim] in fear." See *Davenport*, 230 Mich App at 579. Therefore, the trial court's determination that the victim suffered physical injury during the sentencing offense improperly took into account acquitted conduct, as the crime of UDAA does not require proof that Hult assaulted the victim. Because the trial court could not consider Hult's acquitted conduct, the trial court erred by assessing 10 points for OV 3. OV 3 should have been scored at zero.

### 2. OV 4

Hult argues that the trial court erred by assessing 10 points for OV 4. Ten points are assessed for OV 4 for "psychological injury to a victim" on a finding that "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). The fact that the victim did not seek mental health treatment is not conclusive. MCL 777.34(2). An assessment of 10 points is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). Courts "are limited to solely considering the sentencing offense . . . when scoring OV 4." *Biddles*, 316 Mich App at 167.

In this case, after defense counsel objected to the scoring of OV 4 at the sentencing hearing, the trial court read from the victim's impact statement in the presentence investigation report and then declined to rescore OV 4. However, the victim's impact statement only refers to the emotional issues that resulted from the alleged "assault[]," the alleged "car jack[ing]," and Hult's alleged attempt to "rob[]" the victim of her purse. The impact statement did not attribute any psychological

injury to Hult's taking of the vehicle in the victim's presence. Thus, because the trial court relied on the victim's impact statement, it is clear that the trial court impermissibly relied on acquitted conduct when assigning points to OV 4. Cf. *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 348471 and 348472); slip op at 4, lv pending ("a sentencing court may review a [presentence investigation report] containing information on acquitted conduct without violating *Beck* so long as the court does not rely on the acquitted conduct when sentencing the defendant"). Because the record contains no evidence—let alone a preponderance of it—to support that the victim suffered a serious psychological injury as a result of Hult's commission of UDAA, the trial court erred by assessing 10 points for OV 4. OV 4 should have been scored at zero.

### 3. OV 10

Hult argues that the trial court erred when it assessed 10 points for OV 10, which relates to the "exploitation of a vulnerable victim." MCL 777.40. We conclude that this argument is waived.

A waiver is "the intentional relinquishment or abandonment of a known right." See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). When waiver occurs, any error is extinguished, and the defendant is precluded from raising the issue on appeal. *Id*. In this case, defense counsel objected to the scoring of OV 10, which had been assessed at 15 points, at the sentencing hearing. Defense counsel argued that OV 10 should be scored at 10 points. After hearing argument, the trial court agreed with defense counsel and scored OV 10 at 10 points.[2] In response, defense counsel stated "All right" and moved on to arguments concerning OV 16. Consequently, by defense counsel arguing that OV 10 should be scored at 10 points, any challenge to OV 10 is waived. Therefore, Hult is not entitled to relief in relation to this argument.[3]

### 4. EFFECT OF THE TRIAL COURT'S ERRORS

At his sentencing, Hult's total prior record variable ("PRV") score was 90, and his total OV score was 45. Hult's sentencing offense was a Class E crime, and his minimum guidelines range was 19 to 76 months. See MCL 777.66; MCL 777.21(3)(c). However, the subtraction of 20 points from Hult's OV score reduces his minimum guidelines range to 14 to 58 months. Because Hult's minimum guidelines range has changed, Hult must be resentenced. See *Biddles*, 316 Mich App at 156. See also *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

---

[2] A sentencing court properly assesses 10 points under MCL 777.40(1)(b) if "[t]he offender exploited a victim's physical disability, mental disability, youth or *agedness*, or a domestic relationship, or the offender abused his or her authority status" (emphasis added). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

[3] Even if the argument concerning OV 10 was not waived, we would conclude that the trial court properly scored OV 10 at 10 points given that the victim was an 81-year-female who was shopping by herself and parked in a handicap parking space when Hult committed the crime of UDAA.

In so holding, we note that Hult also argues that the trial court improperly considered acquitted conduct when it fashioned Hult's minimum sentence, which was within the erroneously scored minimum guidelines range. Specifically, after the parties allocuted, the trial court addressed Hult:

> It goes without saying sir that what you did was despicable and you know that and had the jury convicted you of the more serious crime it's certainly [sic] a very long sentence would have been appropriate but they didn't and I respect that. We have the presumption of innocence and we have to follow the Rule of Law . . . .
>
> Even—even if—even if the jury's verdict is questionable, I still have to abide by it . . . . [W]e sentence on the basis of what the facts are and what the facts are, are the facts determined by the jury, but it is clear that they did convict you of [UDAA] . . . .
>
> \* \* \*
>
> This was a crime of opportunity where you took advantage of an elderly lady. You knocked her down but the jury didn't consider that part in partial [sic] of the crime but for sentencing purposes, I can take into account the totality of the circumstances and we're not using the totality of the circumstances to increase a mandatory minimum term that would be unconstitutional. We're taking a look at the totality of the circumstances to figure out what is a fair, right, proportionate and just sentence for you.
>
> \* \* \*
>
> You don't just go take people's cars and you don't just go knocking elderly people down in the parking lot.

Thus, even though the trial court stated that it was not considering acquitted conduct, it nonetheless considered acquitted conduct. Notably, the trial court stated as follows:

> there are ways that the crime of [UDAA] could be committed that [don]'t involve any type of contact with a victim and there are ways in which it could be committed, as in this case, where there was contact. I did take that into account[.]

Importantly, however, the jury could have acquitted Hult of carjacking because it found that Hult was not the man who assaulted the victim. The jury could have concluded that, although Hult never made contact with the victim, he was involved in taking the victim's vehicle or that he committed UDAA at a later time. Indeed, the orange hat that contained Hult's DNA was not described by the victim or by any witness, and the orange hat appears to be unrelated to the carjacking. Notably, Hult's DNA was absent from the vehicle's steering wheel. Regardless of why the jury acquitted Hult of carjacking, the trial court did precisely what *Beck* prohibits— sentencing a defendant as if he committed that very same crime of which he was acquitted. See *Beck*, 504 Mich at 609. In doing so, the trial court erred.

-6-

Because of the trial court's sentencing errors, we vacate Hult's sentence and remand the case to the trial court for resentencing. See *id*. at 609-610 (vacating the defendant's sentence and remanding for resentencing "[b]ecause the trial court . . . relied at least in part on acquitted conduct when imposing sentence for the defendant's conviction"). On remand, the trial court shall resentence Hult without relying on acquitted conduct.

## B. ASSISTANCE OF COUNSEL

Hult also argues that defense counsel was constitutionally ineffective for failing to specifically object to the trial court's consideration of acquitted conduct at the time the trial court was assessing the OVs at issue in this case.[4] We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant "must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Shortly after the trial court scored the sentencing guidelines, defense counsel argued that the prosecutor and the trial court were discussing acquitted conduct. Defense counsel raised the same objection after the trial court had placed its reasoning for the sentence on the record. However, the trial court essentially dismissed defense counsel's objection, and stated on the record that it could consider "the totality of the circumstances" at sentencing. Given the trial court's belief that it was permitted to consider the acquitted conduct when fashioning a sentence, there is no reasonable probability that the trial court would have sustained defense counsel's objection and rescored Hult's sentencing guidelines. Indeed, at the time of sentencing, the trial court did not have the benefit of our Supreme Court's decision in *Beck*. Therefore, we conclude that defense counsel was not constitutionally ineffective for failing to specifically object to consideration of acquitted conduct while the trial court was assessing the OVs at issue.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron

---

[4] Hult does not argue that defense counsel was ineffective for waiving any argument concerning the scoring of OV 10. Indeed, Hult does not even acknowledge that the argument was waived.