*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 11, 2024

Plaintiff-Appellee,

v

No. 352874
Wayne Circuit Court
LC No. 18-008627-02-FH

BRADLEY NOLAN CLARK,

Defendant-Appellant.

## ON REMAND

Before: BOONSTRA, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

In a 2-1 opinion, we reversed Detroit Police Officer Bradley Nolan Clark's convictions of common-law misconduct in office and breaking and entering without permission. *People v Clark*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2022 (Docket No. 352874) (opinion by GLEICHER, J.) (*Clark I*). The prosecution sought leave to appeal in the Michigan Supreme Court and Clark filed a cross-application for leave to appeal. In lieu of granting leave, the Court reversed this Court's conclusion that insufficient evidence supported Officer Clark's convictions and vacated this Court's determination that the trial judge exhibited improper bias in interrogating a witness. The Supreme Court directed this Court to reconsider the judicial misconduct claim and to consider the appellate claims we did not reach in *Clark I*. *People v Clark*, 511 Mich 897; 986 NW2d 602 (2023) (*Clark II*). We now affirm Officer Clark's convictions and sentences.

## I. BACKGROUND

The factual background of this case was outlined in detail in *Clark I*, unpub op at 1-3. Briefly, Officer Clark went to 22554 Pembroke in Detroit with Officer Justin Lyons and Sergeant Paul Glaza to find Michael Hopkins, a suspect in a domestic violence and stalking case. The victim identified 22554 Pembroke as the home of Hopkins' mother and the Secretary of State listed the address as Hopkins' residence. The victim also described Hopkins as driving a rental white SUV with out-of-state plates.

On January 22, 2018, the officers observed a white SUV with out-of-state plates in the driveway of 22554 Pembroke. "Officer Clark approached the front door, while Sergeant Glaza stood to the side in the front yard and Officer Lyons stood at the back corner of the house where he could see the home's side door and backyard." *Id*. at 2. "[C]ertain Hopkins was inside," the officers knocked on the door and encountered Tashar Cornelius, the true owner of 22554 Pembroke. *Id*. The officers claimed to hear voices inside and someone barricading the side door, supporting their belief that Hopkins was inside with Cornelius.

> Cornelius attempted to shut the door, but Officer Clark put his foot in the doorway. He claimed to observe Cornelius put his hand behind his back, as if reaching for a weapon. When Cornelius successfully moved Officer Clark's foot and shut the door, Sergeant Glaza stated, "foot, foot, foot." Officer Clark understood this as an instruction to kick the door open. Officer Clark did so and ordered Cornelius to the ground. [*Id*.]

The officers extensively searched the small home, including the basement and attic, but found no one else. Later investigation established that Hopkins' mother had not lived at the address for five years and Cornelius was the sole owner of the home. Hopkins was located and arrested later on the day of the search, at the home of a friend with his white rented SUV with out-of-state plates.

> Approximately 10 months later, Officer Clark was charged with several crimes related to his involvement in the entry and search at the Pembroke address. Officers Clark and Lyons both testified at trial, and the bodycam footage from all three officers was presented. . . . [T]he jury acquitted Officer Clark of second and third-degree home invasion and malicious destruction of property, but convicted him of common-law misconduct in office and breaking and entering without permission. The trial court sentenced Officer Clark to one year of nonreporting probation. [*Id*. at 2-3 (footnotes omitted).]

In *Clark I*, unpub op at 3-5, we unanimously rejected Officer Clark's claim that the prosecution abused its charging discretion. We also agreed that Officer Clark's position that the common-law offense of misconduct in office was unconstitutionally vague lacked merit. *Id*. at 5-6. While the majority held "that the prosecution presented insufficient evidence to support the corrupt intent element of the misconduct-in-office charge," *id*., Judge LETICA (and the Supreme Court) disagreed. *Clark I*, unpub op at 16 (LETICA, J., concurring in part and dissenting in part); *Clark II*, 511 Mich at 897. That issue is now settled and we may not revisit it.

Judge LETICA also dissented from the majority's conclusion that the trial judge engaged in misconduct in questioning Officer Lyons. *Clark I*, unpub op at 19-20 (LETICA, J., concurring in part and dissenting in part). The Supreme Court vacated, rather than reversed, that portion of *Clark I*, ordering:

> The Court of Appeals majority did not undertake a complete analysis of the totality-of-the-circumstances test set forth in *People v Stevens*, 498 Mich 162, 171-172[; 869 NW2d 233] (2015), but instead relied upon its erroneous finding of insufficient evidence as proof that the trial judge must have improperly influenced

the jury. We therefore REMAND this case to the Court of Appeals for reconsideration of this issue. . . . [*Clark II*, 511 Mich at 897.]

The Supreme Court also remanded "for consideration of the issues raised by [Officer Clark] but not addressed by that court during its initial review of this case." *Id*.

## II. JUDICIAL MISCONDUCT

Officer Clark continues to contend that the trial judge displayed bias during her questioning of Officer Lyons. We review de novo whether Officer Clark was denied a fair trial due to judicial misconduct. *Stevens*, 498 Mich at 168. "A trial judge's conduct deprives a party of a fair trial if [that] conduct pierces the veil of judicial impartiality." *Id*. at 170. This happens "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is "a fact-specific analysis." *Id*.

> A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality. Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors.
>
> These errors must be considered within the context of a given case, i.e., the totality of the circumstances, to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. Moreover, the aggrieved party need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury. The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id*. at 171-172 (citations omitted).]

"Judicial misconduct may come in myriad forms, including belittling of counsel, *inappropriate questioning of witnesses*, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173 (emphasis added).

> Identifying the nature of the conduct provides the starting point to evaluate whether the conduct overstepped the line of judicial impartiality. For instance, when evaluating a judge's questioning of witnesses, a reviewing court must first bear in mind that such interrogation is generally appropriate under MRE 614(b).

This Court has stated that the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information. Judicial questioning, nevertheless, has boundaries. [*Stevens*, 498 Mich at 173-174 (citations omitted).]

The Supreme Court noted: "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally," and "[i]t is essential that the judge not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. at 174 (quotation marks and citations omitted). The Court also cautioned reviewing courts to "consider the tone and demeanor the trial judge displayed in front of the jury." *Id*.

The Supreme Court relied on *Stevens* in finding judicial bias requiring a new trial in *People v Swilley*, 504 Mich 350; 934 NW2d 771 (2019). In doing so, the Court reasoned a trial judge may "ask questions of a witness that are designed to make clearer otherwise unclear, vague, or confusing testimony," "[b]ut it is not the role of the court to impeach a witness or undermine a witness's general credibility." *Id*. at 373 (quotation marks and citations omitted). Moreover, "[a] judge's responsibilities do not include emphasizing or exposing potential weaknesses in a witness's testimony or conveying the judge's personal view on whether a witness should be believed." *Id*.

[I]n an adversarial system, it is the litigants' job to demonstrate to the jury, through questioning or other means, that the testimony of a particular witness is incredible, unsubstantiated, or contradictory. Questions from a judge that are designed to emphasize or expose incredible, unsubstantiated, or contradictory aspects of a witness's testimony are impermissible. [*Id*. at 174.]

This Court subsequently articulated in *People v Boshell*, 337 Mich App 322, 347-350; 975 NW2d 72 (2021):

A trial judge has broad, but not unlimited, discretion when controlling the court's proceedings. The overriding principle is that a court's actions cannot pierce the veil of judicial impartiality. Invading the prosecutor's role is a clear violation of this tenet. The trial court, pursuant to MRE 614(b), may question witnesses in order to clarify testimony or elicit additional relevant information. However, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. The test to determine whether a trial judge's conduct pierces the veil of impartiality, thereby violating the constitutional guarantee of a fair trial, is whether, when considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.

This inquiry requires a fact-specific analysis. A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of

-4-

impartiality. Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors.

Because a reviewing court is to look at the totality of the circumstances,

the reviewing court should inquire into a variety of factors, including [(1)] the nature of the judicial conduct, [(2)] the tone and demeanor of the trial judge, [(3)] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [(4)] the extent to which the judge's conduct was directed at one side more than the other, and [(5)] the presence of any curative instructions. [Quotation marks and citations omitted.]

This Court described the challenged testimony and questions in *Clark I*, unpub op at 10-11, as follows:

Officer Lyons testified at Officer Clark's trial with a promise of immunity. Officer Lyons explained on direct examination that he was on patrol when Sergeant Glaza contacted him for assistance with "a knock and talk." The purpose of the "knock and talk" was to "knock at a suspect's known address, attempt to speak with that suspect, and attempt to make . . . an arrest." Officer Lyons was aware that they were looking for Michael Hopkins. Officer Lyons further described how he kept watch at the home's side door. From his position, he heard a "thump" when the door was barricaded and then heard parts of a conversation, leading him to believe that two people were inside. Officer Lyons "inform[ed] Sergeant Glaza" based on this activity "that there was becoming a heightened sense . . . of a threat."

During cross-examination, Officer Lyons admitted that "if you are able to make an arrest, hopefully, there's a warrant issued." On redirect, the prosecutor inquired whether the officers had an arrest warrant. Officer Lyons replied that they did not because "there was . . . probable cause." He also conceded that they had no search warrant, but explained that he did not expect a search to occur given the small size of the team. But Officer Lyons admitted that at one point he checked to see if the side door was locked.

The court then interjected its own questions:

*The Court*: [Officer] Lyons, why did you try to open the side door?

*The Witness*: I was trying to see if it was locked, if the door was locked.

*The Court*: Why?

*The Witness*: Just as . . . a potential entry point had we needed to make entry.

*The Court*: Without a warrant, okay.

*The Witness*: Well, I'm not saying that I was - -

*The Court*: Without a warrant.

*The Witness*: I'm sorry, your Honor. Well, in case we had to get a warrant or to see if it was unlocked.

*The Court*: Okay, but, you did not get a warrant in this particular case, correct?

*The Witness*: Correct, we did not get a warrant.

*The Court*: With regard to the white vehicle that was in the parking lot [sic], did you have the capacity to run that vehicle?

*The Witness*: No, Your Honor, not at that point.

*The Court*: Your scout car did not have any computer in the car to run the vehicle?

*The Witness*: Correct.

*The Court*: But, you ran Mr. Cornelius's name to determine whether or not he had a record, you were able to do that, correct?

*The Witness*: I don't know if that was a phone call made after, or prior to.

*The Court*: But, a phone call could have been made to run the vehicle that was in the driveway, correct?

*The Witness*: Yes, but in - -

*The Court*: Yes, thank you. [Defense counsel]?

In relation to the first *Stevens* factor—the nature of the judicial conduct—the parties disagree whether the trial judge was clarifying complicated or unresolved testimony or merely injecting her personal beliefs into the trial. Officer Clark emphasizes that it was undisputed the officers did not have a warrant so the issue did not need clarification. He further argues the judge's question regarding running the SUV's license plate actually caused more confusion. The prosecution, on the other hand, asserts the judge's questioning did not reflect hostility *toward* Officer Clark and whether the officers ran the license plate was a very minor detail.

The judge's questions went beyond what was necessary to clarify Officer Lyons's testimony. The judge also injected her belief that the officers required a warrant before Officer Lyons tried to open the side door and that the officers should have run the SUV's license plate. However, as Officer Clark admits, whether the officers had a warrant or checked the license plate were not disputed issues of fact. In *Stevens*, 498 Mich at 174, the Court stated that a judge should not display his or her views "on *disputed* issues of fact," but did not so limit questions on undisputed issues. (Quotation marks and citation omitted, emphasis added.) Further, these issues were not particularly relevant to the dispositive issue at trial—whether Officer Clark's subsequent

entry through the front door was proper because he was either instructed to do so by a supervising officer or because exigent circumstances existed *at that time*. Nonetheless, the judge clearly emphasized the lack of a warrant and failure to run the license plate, which suggested her general belief that the officers acted improperly. Thus, this factor weighs slightly in favor of finding bias.

Further, the trial judge's tone was argumentative and hostile; some of her "questions" were actually comments and she interrupted Officer Lyons. The judge's tone, as best it can be discerned through a transcript, conveyed disdain and disapproval. The prosecution does not deny this, but minimalizes the judicial impropriety as a small part of the trial record. This does not overcome the fact that the trial judge's tone *during this instance* was inappropriate. However, the judge's tone was directed at Officer Lyons or the officers collectively, but was not expressly hostile toward Officer Clark or his particular actions. Therefore, this factor weighs only slightly in favor of finding bias.

We next consider "the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein." *Stevens*, 498 Mich at 171-172. In *Swilley*, 504 Mich at 387, the Supreme Court explained that the question is not just whether the trial as a whole was long or complicated; "A reviewing court must *also* evaluate the *complexity of the particular issues* that were subject to judicial inquiry." *Id*.

The exchange between the trial judge and Officer Lyons was brief, but so was the trial. The specific issues on which the trial judge intervened—whether Officer Lyons had a warrant and whether the officers ran the SUV's license plate—were not complicated. There was no dispute the officers did not have a warrant and neither of the judge's comments related to the dispositive issues at trial. Thus, the scope of the judge's intervention in the context of the trial was minimal. This single act was not so egregious that it pierced the veil of impartiality, particularly given that the questioning did not necessarily reflect on Officer Clark's actions. This factor does not weigh in favor of finding judicial impartiality.

In considering whether judicial questioning was imbalanced, "a reviewing court must evaluate *both* the frequency of the questions *and* the manner in which they are asked." *Swilley*, 504 Mich at 388. As argued by Officer Clark, the prosecution has not identified any comments hostile toward the prosecution in the same manner the subject intervention was slightly hostile toward the defense. However, as this was the only intervention slightly hostile toward the defense, this factor weighs only slightly in favor of finding judicial impartiality.

Finally, while a curative instruction was not immediately given, the trial judge did instruct the jury at the end of the trial that "when I make a comment, or give an instruction, I am not trying to influence your vote, or express a personal opinion about the case. If you believe I have an opinion about how you should decide this case, you must pay no attention to that opinion." The judge's conduct here was not so egregious that a curative instruction could not have cured the error. Indeed, as the jury acquitted Officer Clark of the most serious charges, it appears unlikely that judicial bias improperly influenced the jury to his detriment. See *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016). This factor weighs against finding judicial bias.

In sum, the nature, tone, and one-sidedness of the trial judge's intervention weigh in favor of finding judicial impartiality, but not strongly so. The scope of the intervention and presence of

an instruction weigh against finding impartiality. Although more factors weigh in favor of finding partiality, "[t]he reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case," *Stevens*, 498 Mich at 172, not merely tally them up. Because the issues subject to the judicial intervention were not disputed and were not significant in the context of the trial as a whole, and the jury acquitted Officer Clark of more serious charges, it is not reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against one side. In *Clark I*, unpub op at 12, we concluded that the trial judge's conduct standing alone would be insufficient to justify reversal. The scales tipped in favor of reversal because of the lack of evidence to support Officer's Clark's convictions. Absent this extra impetus, we discern no ground for relief.

## III. SPECIFIC UNANIMITY INSTRUCTION

Officer Clark further contends the court was required to instruct the jury that to support his misconduct-in-office conviction it had to agree on the act supporting that conviction—unlawfully entering the home or lying in his police report—and that his trial counsel was ineffective in failing to request this instruction.

We review for plain error an unpreserved challenge to the jury instructions. *People v Miller*, 326 Mich App 719, 725; 929 NW2d 821 (2019). Officer Clark conceded that remand for an evidentiary hearing on his claim of ineffective assistance was unnecessary because the issue could be reviewed on the existing record. To establish the right to a new trial based on the ineffective assistance of counsel, a defendant must satisfy two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

Officer Clark correctly argues he had "the right to a unanimous verdict" and to have the jury instructed on the unanimity requirement. *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009). Usually, a general unanimity instruction suffices. *Id*. However:

> "[T]he trial court must give a specific unanimity instruction where the state offers evidence of alternative acts allegedly committed by the defendant and 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." [*Id*., quoting *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006) (other quotation marks and citations omitted).]

As stated in *People v Bailey*, 310 Mich App 703, 719; 873 NW2d 855 (2015):

[A] specific unanimity instruction is not required in all cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. [W]here materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice. [Second alteration in original, quotation marks and citations omitted).]

A specific unanimity instruction would be justified in this case because the prosecutor argued that either Officer Clark's improper entry into the home or lying in his police report could support his misconduct-in-office conviction. The prosecution established two separate acts, which were very different from each other and were supported by very different facts. Defense counsel should have requested the specific unanimity instruction, which the trial court would have been required to give, and we discern no strategic reason not to make the request.

However, counsel's failure only warrants relief if it prejudiced his client. Officer Clark argues he was prejudiced because there is reason to believe the jury did not unanimously agree on which act supported his misconduct-in-office conviction. The jury found Officer Clark guilty of breaking and entering, which permits a reasonable inference that the jury unanimously found the unlawful entry supported the misconduct-in-office conviction. On the other hand, as breaking and entering does not have a corrupt intent element, it is possible some of the jurors relied on Officer Clark's lying in his report to support the misconduct-in-office conviction. We find this unlikely for two reasons.

First, the prosecution's primary theory at trial was that Officer Clark committed misconduct in office based on the unlawful entry. The prosecution suggested that lying in the police report might have been an attempt to cover up the unlawful entry. Thus, it is unlikely the jury found Officer Clark lied in his report without also finding that his entry into the house was unlawful.

Moreover, the prosecution argues that the conviction of breaking and entering required a finding that Officer Clark entered the home unlawfully, thus satisfying the corrupt intent element of misconduct in office with that particular underlying actus reus. The instruction regarding the offense of breaking and entering provided that "this offense does not apply if the entering without the owner's permission was committed by a police officer in the lawful performance of his duties." In convicting Officer Clark of breaking and entering, the jury necessarily found he was acting unlawfully. This supports the conclusion that the jury unanimously found corrupt intent with regard to the unlawful entry. Officer Clark's suggestion that the jury could have found him guilty of breaking and entering with a mens rea of recklessness is without merit. Officer Clark fails to explain how the facts of this case would support a finding that his entry into the house was done recklessly. Accordingly, there is little doubt that the jury unanimously found Officer Clark unlawfully entered the home with corrupt intent.

For these reasons, it is more than likely that the jury unanimously agreed on Officer Clark's wrongful entry as the act underlying the misconduct-in-office conviction. Thus, Officer Clark fails to establish a reasonable probability that the specific unanimity instruction would have changed the outcome of his trial.

## IV. PROSECUTORIAL MISCONDUCT

Officer Clark contends the prosecutor made improper pleas to the jury's sense of civic duty by arguing in closing that the jury should hold him accountable for violating his duty as a law enforcement duty, and that defense counsel was ineffective in failing to object. Specifically, the prosecutor argued:

[Y]ou would hope that that person that we trust to do this, would follow the law, would follow the Constitution of the United States[;]

We trust our police officers to know they cannot do certain things without a warrant. . . . [T]hey should be the first line of defense in making sure that our rights are not violated in some kind of way. . . . That's not what we want from our police officers in our community. That's not how we want to be policed. We want them to stop and think about the consequences. We want them to stop and protect the rights of all of the individuals. . . . [I]t is what we should want to weed out from our police officers. That is not the type of police officer that we want out in the field[;]

How long has he been operating this way?[; and]

[T]hey need to be responsible for it, which is why you must return a verdict of guilty[.]

Prosecutors must not engage in improper conduct that denies defendants fair and impartial trials. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). To that end, "it is improper for a prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450, 455-456; 678 NW2d 631 (2004) (citation omitted). "This type of argument unfairly places issues into the trial that are more comprehensive than a defendant's guilt or innocence and unfairly encourages jurors not to make reasoned judgments." *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). However, when a prosecutor argues that the crime has been established beyond a reasonable doubt, such a remark does "not constitute an assertion of personal belief by the prosecutor in defendant's guilt or an argument that the jury should convict the defendant regardless of the evidence." *People v Matuszak*, 263 Mich App 42, 56; 687 NW2d 342 (2004).

Contrary to Officer Clark's assertion, the prosecutor did not expressly argue the jury should convict him in order to hold law enforcement accountable and send a message to police officers. Rather, viewed as a whole and in context, the prosecutor argued that *Officer Clark and the officers involved in this case* should be held accountable for their specific conduct. Because the prosecutor expressly argued the jury should convict Officer Clark based on the evidence, his argument was proper. The prosecutor's arguments also responded to the defense theory that Officer Clark was merely doing what any police officer would do.

Furthermore, any prejudice was cured by the trial court's instructions that the jury had to decide the case based on the evidence and that the attorneys' arguments were not evidence. See *Thomas*, 260 Mich App at 456 ("Once again, to the extent that the prosecutor's comments crossed the line into a civic duty argument, any minimal prejudice was cured by the trial court's

instructions that the jury had to decide the case on the evidence and that the remarks of counsel were not evidence."). As the prosecutor's comments were proper, any objection would have been futile. Counsel cannot be deemed ineffective for failing to raise meritless objections. *Id*. at 457.

## V.  NEW JURY INSTRUCTION CHALLENGE

Although not raised in his original appellate brief, Officer Clark addressed at oral argument whether trial counsel was ineffective for failing to request jury instructions about Fourth Amendment law regarding the lawfulness of the warrantless entry and the good-faith defense to the misconduct-in-office charge. We accepted Officer Clark's supplemental briefing of this issue on remand. *People v Clark*, unpublished order of the Court of Appeals, entered July 12, 2023 (Docket No. 352874).

Officer Clark argues that trial counsel should have ensured the jury was instructed on the difference between lawful and unlawful entries, exigent circumstances, and the good-faith defense.[1] Officer Clark argues trial counsel should have requested jury instructions including the following principles:

(1) The Fourth Amendment protects against unreasonable intrusions into the home.

(2) Generally, before entering a person's home the police must obtain a warrant.

(3) Certain circumstances can excuse the warrant requirement. One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. Courts commonly refer to the exception as "exigent circumstances".

(4) When officers have probable cause and exigent circumstances exist, it is reasonable under the Fourth Amendment for officers to enter a home without a warrant.

(5) Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. Exigent circumstances exist when an emergency leaves law enforcement with insufficient time to obtain a warrant.

---

[1] In *Clark I*, unpub op at 8, we noted the trial court did not advise the jury of the standards of police conduct, including the need to make split-second decisions. Officer Clark does not argue that trial counsel was ineffective by failing to request instructions consistent with the law stated in this Court's prior opinion. Such instructions might have been helpful given the defense theory that Officer Clark was following orders. As Officer Clark did not accept our invitation, we will not consider that angle of the instruction argument.

(6) In determining whether exigent circumstances existed, you must review the facts and information available to the officers at the time they took their actions and in making this determination consider the totality of the circumstances facing them.

In addition, Officer Clark argues the jury should have been instructed that misconduct in office "does not encompass erroneous acts done by officers in good faith or honest mistakes committed by an officer in the discharge of his duties."

Officer Clark must overcome the strong presumption of sound trial strategy. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). There is no record explanation from trial counsel regarding why more specific instructions were not requested or given. However, the prosecution argues that the decision was strategic because, if Officer Clark's proposed instructions were given, then several other instructions on Fourth Amendment law would have been required and there are plausible reasons trial counsel may have wanted to avoid those instructions. "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

Trial counsel's closing argument supports the conclusion that it was a strategic decision to keep the principles of Fourth Amendment law vague for the jury. Officer Clark admitted at trial that there was no emergency call and no reason to believe anyone was in danger. Accordingly, he conceded there were no exigent circumstances to enter without a warrant. Instead, the defense posited Officer Clark was ordered to kick in the door by a superior officer and was unaware of the impropriety of his actions. Defense counsel emphasized that searches are regularly invalidated by the judiciary without criminal charges being levied against the officers involved. Counsel even elicited testimony from Officer Clark regarding other instances in which he entered a home without a warrant. Counsel argued that whether the door was slammed on Officer Clark's foot or not, "he was still waiting for instruction from his sergeant before he does anything."

While there has been significant discussion on appeal regarding the existence of exigent circumstances, this was not trial counsel's theory.[2] Instead, he argued that Officer Clark was following orders and those orders were not "obviously illegal" or "immoral," such as taking advantage of a "13 year old girl we just picked up." Because trial counsel's theory was that Officer Clark did not know he was doing anything wrong and was merely following orders, instructing the jury on the intricacies of Fourth of Amendment law would not have been helpful. In fact, a reasonable attorney in trial counsel's position could have believed detailed instructions on the Fourth Amendment, warrants, and exigent circumstances would have hurt the defense by clarifying there were no actual exigent circumstances. Trial counsel appears to have relied on the vagueness of the law presented to the jury to argue Officer Clark did not know he was doing anything wrong. Officer Clark fails to overcome the strong presumption that counsel's conduct

---

[2] It was, however, part of the prosecution's theory of the case that Officer Clark knew the order was illegal because the officers did not have a warrant and he admitted that none of the limited exceptions to the warrant requirement applied. Although, in hindsight, a better strategy might have been to expressly argue exigent circumstances existed under the law, trial counsel's conduct must not be viewed with the benefit of hindsight. See *White*, 331 Mich App at 149.

was the product of sound trial strategy. Absent ineffective assistance, we need not consider whether the absence of the subject instructions was prejudicial.

We affirm.

/s/ Mark T. Boonstra
/s/ Elizabeth L. Gleicher
/s/ Anica Letica